UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA

v.                                            1:15-CR-159-TWP-MJD

JARED FOGLE

## Government's Sentencing Memorandum

The United States of America, by counsel, Josh J. Minkler, United States Attorney, and Steven DeBrota, Senior Litigation Counsel, hereby submits its Sentencing Memorandum in advance of the hearing presently scheduled for November 19, 2015.   For the reasons stated below, and the additional grounds the Unites States intends to present during the sentencing hearing, the Court should impose a sentence of 151 months of imprisonment, followed by a lifetime period of supervised release.   Upon conviction, he faces a mandatory minimum sentence of 5 years of imprisonment, followed by supervised release for at least 5 additional years and up to the rest of his life. *See* 18 U.S.C. § 2252(a)(2) and (b)(1).   He will also have to register as a sex offender in any state where he works or resides.

## Introduction

Over a long period of time, Defendant Jared Fogle ("Fogle") engaged in two different types of criminal activity targeting children.   He committed some criminal acts on his own, while doing others with a willing and dangerous co-conspirator.   Fogle's actions greatly impacted the lives of 14 children and their families.   He denied them their vital and personal right to grow up free

from sexual exploitation and interference by adults.   In the process, he committed serious federal crimes, which deserve a sentence within the advisory Sentencing Guideline range.

The United States' request for a 151 month sentence falls squarely within the advisory range of 135-168 months provided by a correct application of the United Sentencing Guidelines to the facts of this case.   This accuracy of this advisory guideline range is uncontested and includes consideration of all applicable facts, special offense characteristics, and sentencing enhancements, including the five (5) level increase for repeat and dangerous sex offenders involving minors in USSG § 4B1.5(b).   As the Court knows, the advisory range is the starting point of the statutory sentencing analysis. 18 U.S.C. § 3553.

**Part 1:   Overview of Fogle's Case**

Fogle's crimes are described in Counts 1 and 2 of the Information in this matter and the detailed agreed factual basis in the Plea Agreement.   He has fully and timely accepted responsibility for these crimes, thereby insuring that his many victims and their families receive a much quicker endpoint to their suffering than would be the case if he contested his guilt at trial.   In crimes against children cases, abating the ongoing harm to the victims is a paramount value.   Because this case has received substantial public attention, and because Fogle was a public figure, their lives will never be the same and their

right to privacy will never be fully protected.   In some cases, this unrelenting pressure has caused substantial anguish to these victims, who simply want to be left alone and go on with their lives.   A public trial would only have made this process of healing even more protracted and difficult, without changing the outcome.

This Sentencing Memorandum will provide details concerning Fogle's crimes and the results of the extensive federal, state, and local investigation of his conduct.   Consideration of these facts is appropriate under the statutory sentencing factors in 18 U.S.C. § 3553, which include the nature and circumstances of the offense, and the defendant's history and character.

First, as charged in Count 1, on multiple occasions, Fogle obtained and viewed child pornography given to him by his co-conspirator, Russell Taylor ("Taylor").   Fogle did this to fuel his sexual fantasies involving children.   The child pornography Fogle viewed included homemade material involving victims in Indiana as well as commercially produced files Taylor obtained through internet sources.

## A.    Taylor's Homemade Child Pornography

The victims in the homemade videos and images had different ages when the material was produced.   The youngest victim was 9 years old (Minor Victim 12), while the oldest was about 16 years old.   All of the homemade images and videos included a lascivious exhibition of the genitals or pubic area of each victim.   Additionally, some material also included sexually explicit conduct of the victims.   None of them were aware that they were being filmed.   Rather, the

videos and images were secretly produced using multiple hidden cameras set up in Taylor's residences and operating at various times between March 2011 and April 2015.

### B.   Commercial Child Pornography

The commercial child pornography was more sexually explicit, including actual or simulated sexual intercourse.   This material came from internet sources and may be classified as commercial child pornography produced by other offenders, some of whom likely had a financial motivation.   This child pornography is believed to have been produced in Eastern Europe by unknown persons based upon some labels in the images or videos.   The unidentified victims in these images and videos were as young as approximately 6 years old. Their names will likely never be known and this material has been seen before in multiple cases.   Fogle and Taylor did not produce any of this material, nor did they have any role in its commercial sale by the original producers.

### C.   Recovered Evidence

During the investigation, the commercial and homemade child pornography was first recovered during a search of Taylor's Indianapolis residence, where hundreds of videos were found in computer equipment, storage devices, cameras, and other media analyzed by the Cybercrime Section of the Indiana State Police ("ISP Cybercrime Section").   During the search of Fogle's home, two images of child pornography were recovered from his cellular phone as part of a text message from Taylor to Fogle.   This victim was 14 years old. Fogle received these images, but did not produce them.

### D.    The Indiana Investigation

The search of Taylor's residence resulted from information a concerned Indiana resident gave to the ISP Cybercrime Section.   The Indiana resident told the ISP Cybercrime Section that the resident received text messages from Taylor discussing his sexual interest in children and bestiality.    This information formed the basis of a state search warrant.   Later, while serving the search warrant at Taylor's residence, child pornography was discovered.   The resulting investigation of Taylor then addressed his collection of child pornography through further search warrants.

The Taylor investigation was expanded to include people associating with him.   This included Fogle, whose criminal activity was initially discovered through text messages recovered from Taylor's cellular phones.   The federal investigation of Taylor and Fogle in Indiana arose from this discovery, not information from persons in other states that was only received in Indiana after Taylor's residential search in April 2015.

### E.    Relationship between Fogle and Taylor

The conspiracy between Fogle and Taylor grew from their personal and business relationships.   Fogle frequently traveled with Taylor, including trips to foreign countries.   They met frequently because they both worked for, or on behalf of, Fogle's charitable foundation.   Their communications included the extensive use of text messaging on cellular phones and email, in addition to meetings in person and through telephone calls.   Through these contacts with Taylor, Fogle knew that the children depicted in the homemade images or videos

were under the age of 18 years.   He also knew of Taylor's family relationship or association with the victims, including in many instances, their actual names. In some cases, Fogle met the children during social events in Indiana with Taylor and his family.   However, these meeting were social and did not include any sexual activity of any kind at any point.

### F.     Scope of Investigation

Over the course of the present investigation, the federal, state and local investigators in Indiana conducted multiple search warrants, analyzed seized computer data, and visually examined each and every one of the many images and videos recovered during the investigation.   The purpose of this work was to locate and identify every one of the victims where possible.   This was an exacting process that involved the careful consideration of the data in each file, together with any metadata, and the other evidence in the case.   All of the email accounts of the relevant persons were examined.

A fair estimate of the amount of data recovered and examined would be approximately 5.6 terabytes recovered from the following:

- 16 smartphones

- 5 basic cell phones

- 5 MP3 players

- 5 tablet devices

- 6 laptops

- 1 desktop

- 6 loose hard drives (including Externals)

- 5 cameras (including hidden cameras)

- 10 flash drives

- 10 memory cards (SD & micro SD)

- 46 CDs

- 22 DVDs

The amount of data included at least the following:

- 159,634 SMS & MMS messages

- 27,140 emails, not including Taylor's account

- 47,623 images

- 3,394 videos

These large numbers are fair estimates—the amount of data may be higher than this, but all this work provided the solid evidentiary foundation for the charging decisions against Fogle and Taylor.   The analysis took several weeks and led to the identification of 12 victims of the child pornography offense living in Indiana (Minor Victims 1 through 12), together with two further victims of child prostitution (Minor Victims 13 and 14) then living in New York.

Fogle is not shown in any of the child pornography, nor does the United States believe that he produced any of the recovered material himself.   This conclusion is consistent with the victim interviews because none of those persons stated that the recovered child pornography involving them was photographed or filmed by Fogle.   The homemade child pornography was also made at Taylor's residence when Fogle was not present.

**G.    The Fogle and Taylor Conspiracy (Count 1)**

By 2011 at the latest, Fogle learned that Taylor was sexually attracted to children.   Fogle knew that Taylor would obtain and view child pornography from the internet.   Then, in March 2011, Fogle learned that Taylor was secretly filming Minor Victim 1 in Taylor's residence.   The videos involving Minor Victim 1 included sexually explicit conduct produced inside that location.   Minor Victim 1 was then a 14 year old girl working for Taylor at his residence.

In the years that followed, Taylor provided minors with drugs, alcohol, and occasionally money to induce them to engage in sex acts.   Taylor also engaged in sexual acts with two of them when they were 14 years old.   However, the child pornography recovered during the investigation does not show any sexual activity between Taylor and these victims.   Fogle could have prevented this, even if he did not actively participate in Taylor's other sexual activities.

Fogle decided not to report his knowledge of Taylor's sexual exploitation of Minor Victim 1 to law enforcement officials, a decision giving Taylor the opportunity to sexually exploit Minor Victims 1 through 12 during the four years that followed.   Fogle's decision was motivated by his desire to see the child

pornography Taylor produced.   Taylor stored this material on his computers or storage media.   However, Fogle never met Minor Victim 1 in person.

Fogle essentially rationalized that Taylor was going to secretly produce more material involving the minors in his home anyway, so he might as well benefit from the production by seeing the results, which interested him.   Fogle's decision and the many resulting later actions were the genesis of the conspiracy to distribute and receive child pornography.

On various occasions between March 2011 and February 2015, Taylor provided Fogle with child pornography images and videos through text messages and by providing him with a thumb drive containing files.   Taylor would also provide Fogle with access to a computer containing child pornography.   This activity formed the basis for their conspiracy to distribute and receive child pornography with each other.   Two of these files were found in Fogle's telephone, together with the actual first name of the Minor Victim depicted.

The United States has concluded that Fogle received access to the child pornography involving Minor Victims 1 through 8 (all of whom are female and at least 12 years old), but did not receive the material involving Minor Victims 9 through 12 (males and the youngest female).   Taylor kept the rest of the material from Fogle.   Nevertheless, Fogle could have prevented the sexual exploitation of all of these victims had he promptly reported what he knew about Taylor's criminal activities.   Rather than doing this, he continued to obtain child

pornography he received from Taylor, including some of the new material Taylor was producing involving later victims.

### H.    Fogle's Child Prostitution Activities (Count 2)

Between 2010 and February 2013, Fogle traveled to other states and engaged in commercial sexual acts with underage minors.   This included Minor Victims 13 and 14, who were then 16-17 years old.   Both were living in New York City.   Fogle paid them to engage in sexual acts with him in hotel rooms. However, Fogle did this on his own and without any participation by Taylor.

Fogle's sexual activities with underage minors was initially discovered in Indiana through analysis of the text messages recovered from his cellular phones, three of which were found during the search of his Zionsville residence on July 7, 2015.   These messages and related emails show that he repeatedly found adult escorts through the Internet and discussed with them his interest in paying them a finder's fee to provide him with access to underage minors for commercial sex acts.   He did this in several places, including Richmond, Virginia; Kansas City, Missouri; and Las Vegas, Nevada.   His pattern was to do this only after engaging in commercial sex acts with these escorts and knowing that they were not police officers.   In most cases, Fogle was unsuccessful in finding an underage minor for commercial sex, either because the adult escorts refused to do this or because they said that they did not have any underage associates.

The United States examined all of Fogle's text messages covering a

multi-year period, conducted many interviews, and determined that Fogle engaged in commercial sexual acts with Minor Victims 13 and 14 in New York City.   This behavior, which included interstate travel to New York City, is charged in Count 2.   Federal law makes it a crime to engage in commercial sexual activity with a minor under the age of 18 years.   For non-commercial sexual acts, the relevant age of consent in Indiana is 16 years.

## I.      The Investigation of Fogle's Activities

In addition to the charged behavior, Fogle has discussed sexual activity involving minors with several other adults around in the United States over an extensive period of time.   The United States has very carefully examined all of these communications and searched for evidence corroborating the statements Fogle made to these persons concerning what he said was his prior sexual activity involving children.   For example, if he described engaging in sexual activity in a certain geographical area, the investigators tried to locate any child generally described in the communication or otherwise try to prove that Fogle's Actually engaged in the behavior he described.   However, this process was difficult because none of these communications included the specific name or address of a child victim.

During the investigation, the United States obtained information from adult witnesses in Florida, Georgia, and Oregon showing that Fogle repeatedly discussed with them his interest in engaging in sex acts with children or stated that he had done so in the past.   For two of these people (Person 1 and Person 2), there were recordings or text messages that were produced at various times

between 2007 and 2009.   No child pornography relating to these communications was ever identified as having been produced or recovered during the investigation.   Nor did Person 1 or Person 2 receive any child pornography from Fogle, or witness him doing anything improper with a child.

### J.   Information Provided By Person 1

According to the analysis of all of the telephone conversations between Person 1 and Fogle between July 31, 2007 and January 26, 2009, Fogle stated that he was sexually attracted to children as young as 8 years old and wanted to engage in sexual acts with them.   These calls included highly inappropriate and disturbing references to Person 1's young children and their friends.   In addition, Fogle told Person 1 about traveling to foreign countries to engage in sex with children.   Fogle stated that he has done this in the past, meaning the period before the conversations in the recordings.

Person 1 was an adult in Florida, who reported Fogle statements to the FBI in Florida in 2007 and then participated in consensually monitored telephone calls over this period of time, ending in January 2009.   The Indiana investigators first spoke to Person 1 on July 9, 2015, after they learned of her existence and then obtained the recordings she provided to the FBI in Florida. She provided very helpful information concerning her calls with Fogle.   She described the process that led to her reporting his activities to the FBI in Florida and their subsequent investigation.   The FBI in Indiana listened to all of these recordings, as summarized above.   All of the recordings predated the crimes charged in this case, which began in March 2011.   Fogle never mentioned

Taylor at any point in these records and the conspiracy with him had not yet been formed.

The information and recordings provided by Person 1 provide important corroborative evidence of Fogle's motive and intent to engage in the criminal activity charged in this case.   They help to explain, for example, why he would want to view child pornography or engage in sexual acts with an underage minor. However, Fogle never actually traveled to Florida to meet Person 1's children for sexual purposes or sent any child pornography to Person 1.   Moreover, there is no evidence showing that Fogle engaged in sexual acts with a preteen minor in a foreign country, as he stated in the recordings.   The evidence involving foreign travel only includes encounters with adult prostitutes, none of whom were preteens.   Therefore, while Fogle clearly discussed his desire to engage in illegal sexual acts with Person 1's children or other minors during the telephone calls, the United States cannot prove that he went beyond talking about these things. He never traveled to Florida or met the children involved for this purpose.

**K.   Information Provided by Persons 2 and 3**

Additionally, Fogle separately discussed his sexual attraction to underage minors with Persons 2 and 3, who were also then residents of Florida, and Person 4, a resident of Oregon.   These communications occurred in the context of their telephone or other discussions with Fogle, which they separately reported to the Indiana investigators in 2015, after the searches of Taylor and Fogle home were widely reported in the press.

Person 2 contacted the FBI in Indianapolis through their counsel after the

search of Fogle's residence on July 7, 2015.   Before this, the FBI in Indiana had no information from her.   The news coverage of the search encouraged many witnesses to come forward.   Person 2 provided some text messages she received from Fogle between January 6, 2008 and June 19, 2008, during which he discussed having sexual contact with a 16 year old prostituted minor he met through Craiglist.com.   He also discussed wanting Person 2 to engage in adult prostitution while he watched.   Person 2 was an adult; she never worked as a prostitute at any point, nor had any intension of doing so.   Finally, Person 2 reported that Fogle discussed his sexual attraction to underage minors with her.

Persons 3 and 4 also contacted the Indiana investigators after the search of Fogle's residence on July 7, 2015.   Before this, their existence was also not known to them.   Persons 3 and 4 did not make any recording of their telephone calls with Fogle, but both adults reported that he discussed his interest sexual interest in underage minors with them.   Persons 3 and 4 found this offensive and did not approve of such interest.   The discussions between involving Persons 3 and 4 with Fogle did not progress to the more explicit point seen in the discussions with Persons 1 and 2.   Both Person 1 and 2 had no sexual interest in children, nor desire to engage in such conversations or behavior with Fogle.

### L.     Investigative conclusions about these statements

The United States' conclusion about the communications with Persons 1-4 is that Fogle repeatedly expressed sexual fantasies concerning children to multiple persons, but no victims under the age of 18 years could be specifically identified apart from those victims already charged in this case.   There are no

promising investigative trails to find any other victims either, especially given the passage of time from the events Fogle described which predate most of the digital evidence.   The Court can be confident that this analysis was very thorough and included the analysis of hundreds of thousands of text messages, online records, images, videos, email messages, travel records, and other documents, together with multiple witness interviews.   While Fogle has paid for commercial sexual activity with adults on hundreds of occasions, Minor Victims 13 and 14 are the only specifically identified persons that have been found and interviewed at this point.   To the extent any other witness surfaces, the Plea Agreement expressly allows the United States to bring any additional charges that would be appropriate in those circumstances.   The United States has not given up the right to pursue additional charge if this happens.   Fogle is pleading guilty to every crime the United States could prove to a jury beyond a reasonable doubt based upon admissible evidence.

Fogle went to great lengths to engage in commercial sex acts with underage minors.   He bought plane tickets, reserved and paid for hotel rooms, made arrangements for the commercial sex acts, engaged in commercial sex acts with minors, and solicited a digital image of a minor engaged in sexually explicit conduct from one of the prostituted minors.   He sought to use these prostituted minors to find other minor children with whom he could have sexual contact. He continually communicated with the prostituted minors in his attempts to find even younger children for sex.   He specified the ages he wanted, including 14 and 15 year olds.   He was willing to pay a significant finder's fee and price for

this contact.

In summary, Fogle has sacrificed absolutely everything he had built – including his family – to engage in sexually explicit conduct with two minors. He emboldened a molester and a producer of child pornography.   He allowed Taylor to produce child pornography because of his own sexual attractions.   He did this even though he actually knew some of the children in the Taylor's recordings.

**Part 2:   Factors under 18 U.S.C. § 3553**

The Court's reasoning in imposing a sentence must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a).   In pertinent part, these factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of

the defendant.   Because the Sentencing Guidelines are now advisory, the Court must consider the § 3553 factors listed to determine the actual sentence.

The nature and circumstances of the offenses have been discussed in detail above.   These facts form an accurate and reliable basis to understand his true interests and activities, which show a longstanding and persistent pattern of behavior.   They also provide a window to Fogle's history and character.   Beyond this he has no prior criminal convictions.

Unlike many defendants before this Court, Fogle had a good childhood. His parents provided for all of his needs and continue to remain supportive.   His wife had no idea he was going any of these things and has filed for divorce. While the Court will receive extensive information during and before the sentencing hearing about his mental health treatment and extensive testing, this information should be viewed in the context with all of the other facts and circumstances.

Congress, the Supreme Court, and the Sentencing Commission believe that general deterrence is a very important factor when considering an appropriate sentence.   *Irey*, 612 F.3d at 1206, (citing *United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the

product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261

(3rd Cir. 2007) ("Deterring the production of child pornography and protecting

the children who are victimized by it are factors that should have been given

significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959

(7th Cir. 2006) ("Transporting and receiving child pornography increases market

demand.   The greater concern under the Sentencing Guidelines is for the

welfare of these exploited children.   The avenue Congress has chosen to weaken

the child pornography industry is to punish those who traffic in it.").   In *United*

*States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007), the Seventh Circuit opined

that:

> Young children were raped in order to enable the production of the
> pornography that the defendant both downloaded and uploaded –
> both consumed himself and disseminated to others.   The greater
> the customer demand for child pornography, the more that will be
> produced.   Sentences influence behavior, or so at least Congress
> thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory
> sentencing factor.   The logic of deterrence suggests that the lighter
> the punishment for downloading and uploading child pornography,
> the greater the customer demand for it and so more will be
> produced.

Similarly, the Sixth Circuit reversed the district court when the district

court failed to see any importance in general deterrence.   *See United States v.*

*Bistline*, 665 F.3d 758, 767 (6th Cir. 2012).   The district court stated, "general

deterrence ... will have little [if] anything to do with this particular case."   *Id.*

The Sixth Circuit found the district court's statement "inexplicable and in any

event conflicts with our statement that 'general deterrence is crucial in the child

pornography context[.]"   *Id.*   (citing *United States v. Camiscione*, 591 F.3d 823,

834 (6th Cir. 2010)).

Persons with a sexual attraction to young children may be difficult to deter, but these sentences matter. These offenders frequently communicate with each other online and they are concerned about law enforcement efforts. In many ways, the results of these cases help to deter and teach by example. There is no avoiding the point that, whatever the result in this matter, it will be closely watched by current and potential offenders who have not yet been identified.

Concerning the need for the sentence imposed to protect the public from further crimes of the defendant, it is true that Fogle argues that he is at a low risk to recidivate. However, he is more likely to recidivate than others convicted of non-contact child pornography offenses because of his repeated offenses efforts to obtain and use prostituted minors.[1]

## Conclusion

For the reasons stated, the United States will request the Court to impose a sentence of 151 months of imprisonment, followed by lifetime supervised release. Concerning restitution, the Court should approve Fogle's agreement to pay a total of $1,400,000 to Minor Victims 1 through 14 ($100,000 each). Finally, the Court should also impose a substantial fine, order forfeiture of

---

[1] "A pedophilic sex offender who has committed both a child –pornography offense and a hands-on sex crime is more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child-pornography offense." Citing Drew A. Kingston et al., Pornography Use and Sexual Aggression: The Impact of Frequency and Type of Pornography Use on Recidivism Among Sexual Offenders, 34 AGGRESSIVE Behav.1, 9 (2008).

$50,000 in lieu of the vehicle used during the criminal activity, order forfeiture all of the seized materials, and impose a $200 mandatory special assessment.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:   s/Steven D. DeBrota
Steven D. DeBrota
Assistant United States Attorney
Office of the United States Attorney
10 W. Market Street, Suite 2100
Indianapolis, IN 46204-3048
Telephone: (317) 226-6333
Fax:   (317) 226-6125
Email:   Steve.DeBrota@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2015, a copy of the foregoing Sentencing

Memorandum was filed electronically.   Notice of this filing will be sent to the following parties

by operation of the Court's electronic filing system.   Parties may access this filing through the

Court's system.

       Jeremy D. Margolis
       LOEB & LOEB, LLP
       321 North Clark Street
       Suite 2300
       Chicago, IL 60654

       By:    s/Steven D. DeBrota
               Steven D. DeBrota
               Senior Litigation Counsel
               Office of the United States Attorney
               10 W. Market Street, Suite 2100
               Indianapolis, IN 46204-3048
               Telephone: (317) 226-6333
               Fax:   (317) 226-6125
               Email:   Steve.DeBrota@usdoj.gov