# EXHIBIT A

ORIGINAL

# United States District Court

## SOUTHERN DISTRICT OF INDIANA

**UNITED STATES OF AMERICA**

**V.**

**RICHARD ZACHERY GARDNER**

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:13-MJ-00519

I, Special Agent Michael Johnson, Dept. Of Homeland Security, U.S. Homeland Security Investigations, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

**COUNT 1:** Between on or about September 18, 2012 and September 19, 2012, at Anderson, Indiana in the Southern District of Indiana, Gardner knowingly received visual depictions of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252(a)(2).

**COUNT 2:** Between on or about January 1, 2012 and on or about November 14, 2012, at Anderson, Indiana in the Southern District of Indiana, Gardner knowingly possessed visual depictions of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252(a)(4)(B).

I further state that I am a Special Agent and that this complaint is based on the following facts:

See attached affidavit

**Continued on the attached sheet and made a part hereof.**

**Special Agent Michael Johnson**
**Dept. Of Homeland Security**
**U.S. Homeland Security Investigations**

**Sworn to before me, and subscribed in my presence**

June 20, 2013
**Date**

at Indianapolis, Indiana
**City and State**

Debra McVicker Lynch, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Michael Johnson, a Special Agent (SA) with the Department of Homeland Security, U.S. Homeland Security Investigations ("HSI"), being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with HSI and I am currently assigned to the Office of Investigations, Resident Agent in Charge, Indianapolis, Indiana (RAC/IP). I have been employed as a Special Agent with HSI since February of 2006.

2. Prior to being appointed as a Special Agent with HSI, I was a Police Officer for the City of Indianapolis for approximately eleven years. The last four years, I was assigned to a federal task force. During my experience with both agencies, I have been involved in numerous investigations, including those involving production, distribution, receipt and possession of child pornography.

3. I have had training through the Federal Law Enforcement Training Center, HSI, the Indiana State Police, Office of Juvenile Justice Prevention, the United States Attorney's Office, and Project Safe Childhood in investigating computer related crimes and child exploitation. Since being employed with HSI, I was temporarily assigned to HSI's Cyber Crimes Center (C3). During this assignment, I worked on active undercover cyber investigations as well as the cataloging of over 10,000 images and videos of child pornography. I have been involved in over one-hundred investigations pertaining to the sexual exploitation of children

4. As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

5. The factual information supplied in this affidavit is based on an investigation conducted by me and another law enforcement officer; my experience, training, and background;

and, my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography. In particular, one of the investigators I have spoken to concerning this investigation was Detective Christopher Cecil.

6. Detective Cecil is a detective with the Indiana State Police, assigned to the Crimes Against Children Unit, and authorized to conduct investigations on behalf of the State of Indiana. He has been employed with the department since October 2004. Cecil is an active member of the Indiana Internet Crimes Against Children Task Force. Cecil has been involved in numerous child exploitation investigations, especially those involving the online dissemination of child pornography via the Internet. He has assisted in child exploitation investigations with the US Department of Homeland Security Investigations – ICE, the US Postal Inspection Service, the FBI, and various other local law enforcement agencies throughout the United States and Indiana.

7. I have also conferred with Detective Sergeant Joel Metzger about this investigation. Detective Sergeant Metzger has been employed with the Indiana State Police since 1979. He is also a task force officer assigned to the US Department of Homeland Security Investigations – ICE. In addition, he is the assistant commander of the Indiana Internet Crimes Against Children Task Force. Detective Sergeant Metzger has received extensive training in the area of child pornography and child exploitation. He has had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2252) in all forms of media (including computer media) and has participated in the execution of numerous search warrants, many of which involved child exploitation and/or child pornography offenses.

8. Because this affidavit is being submitted for the limited purpose of securing a Criminal Complaint and Arrest Warrant to charge **Richard Zachery Gardner ("GARDNER")** with receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and

2252(a)(4)(B), I have not included each and every fact known to me concerning this investigation.

9. **Receipt of Child Pornography:** 18 U.S.C. § 2252(a)(2), in pertinent part, prohibits a person from knowingly receives or attempting to receive any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct.

10. **Possession of Child Pornography:** 18 U.S.C. § 2252(a)(4)(B), in pertinent part, prohibits a person from knowingly possessing any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct.

11. **Definitions:** As used herein:

a. The term "minor" means a person under the age of 18 years. 18 U.S.C. § 2256.

b. The term "peer to peer file sharing" (P2P) is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using P2P software form a network that allows for the sharing of digital files between users on the network.

c. The term "Globally Unique Identifier" (GUID) number is a unique reference number used as an identifier in computer software. Most peer-to-peer file sharing

software generates a unique GUID per user account. Even if the users IP address changes, the GUID remains the same.

## I. BACKGROUND OF INVESTIGATION

12. Detective Cecil conducts undercover investigations into the internet sharing of child pornography on a P2P file sharing program that accesses the Gnutella Network. Detective Cecil used P2P file sharing software to locate computers sharing images and videos of child pornography. Detective Cecil utilized an enhanced version of this software which is set for single source downloads. Additionally, the software has an embedded mechanism that logs the traffic between the undercover and the subject computer.

13. On August 21, 2012, Detective Cecil located a computer on the network that was participating in the distribution or attempted distribution of known images and videos of child pornography. The computer was utilizing an IP address of **99.137.61.203** and GUID **2CDC804C4E453DE435947C937D9C1B00**. The computer was configured to allow the browsing of their public shared folder.

14. At approximately 2:42 p.m., Detective Cecil successfully connected with the computer using the IP address **99.137.61.203**. With the aid of is his investigative P2P software, Detective Cecil was able to obtain a list of files that the individual using the IP address **99.137.61.203** was sharing on the P2P network.

15. Detective Cecil viewed the list of files available to download from the IP address **99.137.61.203.** The shared list consisted of 35 files; several of these files were identified as child pornography or had filenames suggestive of child pornography. Detective Cecil initiated a single source download from the files listed and received 1 complete video and 1 complete image downloads during that undercover session, both of which depicted children under the age of


engaging in sexually explicit acts and/or poses.

17.     The IP address of **99.137.61.203** was active from August 21, 2012 to September 7, 2012.

18.     Detective Cecil reviewed the downloaded files from his undercover sessions outlined above and, based upon his training and investigation experience, he concluded these files were child pornography.

19.     Detective Cecil provided me with copies of the downloaded files described above. I have reviewed the images and videos and have concluded they are child pornography.

20.     Detective Cecil conducted an Internet search and ascertained the IP address **99.137.61.203** resolved to the Internet service provider AT&T U-verse.  On August 24, 2012 the United States Attorney's Office for the Southern District of Indiana sent an administrative summons to AT&T U-verse requesting the identification the subscriber using the IP address **99.137.61.203** assigned on August 21, 2012 at 1442 hours EDT.

21.     On August 30, 2012, Detective Cecil received a response from AT&T U-verse concerning the account which had been accessing the IP address on the given dates.  According to the subpoena response, AT&T Internet Services U-verse Light Speed internet access accounts have a unique IP address provisioned to the account.  The subpoena response contained the following subscriber information: Alice Miller, 2619 Fowler Street, Anderson, Indiana, 46012.

## II.     PROBABLE CAUSE

### A. 2619 Fowler Street Investigation – November 26, 2012

22.     On November 26, 2012, a Federal Search Warrant, issued in the Southern District of Indiana, was executed at 2619 Fowler Street, Anderson, Indiana.  The law enforcement officers executing the search warrant included Special Agents from HSI, as well as law

enforcement officers from the Indiana State Police (ISP) and the Indiana Internet Crimes Against Children Task Force.

23. During the execution of the search warrant, no child pornography was uncovered. However, law enforcement officers learned that Lee Petry, Robert Mahon and **Richard Zachery Gardner ("GARDNER")**, had lived in the garage behind the residence but moved out in mid-September 2012. Law enforcement also learned that Petry purchased a residence located at 1723 West 10th Street, Anderson, Indiana, and that Petry, Mahon and **GARDNER** now live there. In addition, law enforcement learned that all three men utilized the wireless internet from Miller's house.

**B. 1723 West 10th Street Investigation – November 26, 2012**

24. On November 26, 2012, law enforcement drove to 1723 10th Street, Anderson, Indiana to locate Petry, Mahon, and **GARDNER**.

25. Law enforcement arrived at the residence at approximately 1:15 p.m. Petry and Mahon verbally consented for law enforcement to enter the residence. Petry and Mahon voluntarily spoke to law enforcement.

26. Mahon verbally consented to an examination of his computer. Nothing of evidentiary value was found on his computer following a forensic triage examination.

27. Petry also verbally consented to the examination of his desktop computer and laptop computer. Both computers were collected and examined in the mobile forensic vehicle. Nothing of evidentiary value was found on Petry's desktop computer.

28. However, Petry's laptop computer, a black HP laptop, was powered on and a P2P program was active on the desktop. Petry told law enforcement that **GARDNER** recently traded the laptop to Petry sometime within the past couple of months and that **GARDNER** installed a

new Windows operating system over the original operating system for Petry.

29.     Child pornographic images and videos were found by law enforcement on the black HP laptop computer during an onsite forensic triage examination. These images were found in a directory called "Windows.old." This directory contained numerous folders from the previous operating system. The user profiles: "Zacheriah" and "Guest.Zacheriah-PC" were found within the "Windows.old" directory.

30.     Law enforcement also found a movie named "Zachs movie_0001.wmv" on the black HP laptop computer, which contained a compilation of still images of prepubescent Caucasian boys depicted in various states of nudity, in sexually suggestive poses, and engaging in sexual intercourse with an adult male. The boys appeared to be 4 to 6 years of age.

31.     **GARDNER** was advised that he was not under arrest and did not have to speak with law enforcement. **GARDNER** consented to an interview with law enforcement.

32.     **GARDNER** admitted that he first viewed child pornography when he was approximately 15 years old. He stated that he began searching for child pornography via a P2P file sharing network when he was approximately 16 years old.

33.     **GARDNER** admitted searching for child pornography using terms such as "PTHC" and "KDV," a term he admitted was used by pedophiles.

34.     **GARDNER** admitted that he, Petry and Mahon previously lived with Alice Miller at 2619 Fowler Street, Anderson, Indiana.

35.     **GARDNER** admitted that he gave his black HP laptop computer to Petry approximately one month prior to the November 26, 2012 search. **GARDNER** stated that Petry was not aware that there was child pornography on the black HP laptop. **GARDNER** stated that although he has allowed a few people to use his computer he did not think anyone who used the

computer downloaded anything. **GARDNER** stated that no one else was responsible for downloading the child pornography found on the black HP laptop computer.

36. **GARDNER** admitted that he installed the P2P software on the computer that he traded to Petry. **GARDNER** stated that he knew that he had files going to a shared folder. In response to whether he knew he was sharing on the P2P program, Zack stated that he "really didn't know what P2P was, but just to download stuff. So, I knew it was sharing. But, I didn't know at the time." When law enforcement clarified the question, Zack stated that he knew he was sharing. Zack also stated that he used other P2P programs. **GARDNER** admitted to last using P2P file sharing software during September 2012.

37. **GARDNER** stated that he downloaded a lot of files and deleted those files which he did not like.

38. **GARDNER** was questioned about the "Zachs movie_0001.wmv." He admitted to downloading the file approximately three to four months ago and renaming it.

39. **GARDNER** stated that he never received any child pornography though chatting with individuals electronically. **GARDNER** stated that he received some child pornographic files via email.

40. **GARDNER** stated the he used the following email addresses: **ZACH EMAIL GMAIL and ZACH EMAIL YAHOO.**[1] **GARDNER** identified the user account **ZACH EMAIL YAHOO** as being the account that he used to share child pornography. **GARDNER** stated that he set up his Gmail account approximately one month ago. **GARDNER** gave law enforcement written consent to take over these two email accounts.

41. **GARDNER** stated that he last received child pornography via email about three months ago but could not recall the individual he received it from.

---

1 The actual email addresses will remain confidential for purposes of this arrest warrant.

42. Following this discussion with **GARDNER**, Detective Cecil accessed **GARDNER's** two email accounts.

43. Detective Cecil found an email in **GARDNER's** Gmail account dated September 18, 2012 at 2:44pm from a user identified as **PERSON 1** utilizing the email address **PERSONAL ADDRESS 1**.[2] **PERSON 1** identified himself a 58 year old French male named "Leo" who liked "cp boy 5yo and 14yo." Leo expressed an interest in exchanging images and attached four images to the email, three of which appeared to be child pornography as follows:

a. **File name: k1 nice-little-boy 1023.jpg**
**File Size: 21K**

*This image depicted a nude prepubescent Caucasian boy reclining on his back with his legs pulled back towards his chest. The boy's anus and testicles were visible. The boy appeared to be between 6 and 8 years of age. Blue jeans appear to be around the boy's ankles.*

b. **File name: k1 nice-little-boy 1188.jpg**
**File Size: 74K**

*This image depicted a nude prepubescent Caucasian boy reclining on his back. The boy's face was not seen, however his penis and testicles were visible. A white milky like fluid covered the boy's genitals, lower abdomen, and right thigh.*

c. **File Name: k1 nice-little-boy 1195.jpg**
**File Size: 419K**

*This image depicted the penises of two males inserted into the mouth of a young boy with an olive complexion. One male is pubescent whereas the other is prepubescent. Only the face of the young boy was observed.*

2 The actual name and email address of Person 1 will remain confidential for purposes of this arrest warrant.

44. Detective Cecil found a reply email, dated September 19, 2012 at 12:57pm, from **GARDNER** to **PERSONAL ADDRESS 1** stating:

> *Skype me I love the pics we can talk and trade :) and can we be friends and connect with each other on shareghost? Get back to me :) btw love the pics :) im zach*

45. Detective Cecil showed **GARDNER** the September 18 and 19, 2012 emails to and from **PERSONAL ADDRESS 1**. **GARDNER** stated that he had forgotten about those emails. **GARDNER** admitted to responding to **PERSONAL ADDRESS 1**. **GARDNER** stated that he never emailed this user any images.

46. **GARDNER** stated that he never had sexual contact with a child.

47. Law enforcement concluded the discussion with **GARDNER**

**C. Follow Up Forensic Examinations**

48. On January 7, 2013, Detective Cecil reexamined the contents of **GARDNER's** two email accounts.

49. Detective Cecil discovered numerous texting conversations which had been stored in the Yahoo! email account.

50. There was one series of conversations which were between **ZACH EMAIL YAHOO** and a user identified as **PERSON 2** utilizing the email address **PERSONAL ADDRESS 2**.[3] The earliest conversation available between **GARDNER** and **PERSON 2** appears to have been November 1, 2011. The topic of discussion in many of these conversations related to having sexual intercourse with minor children and the desire of both of them to find a boy and have sex with him. The following describes in sum and substance the nature of these conversations:

3 The actual name and email address of Person 2 will remain confidential for purposes of this arrest warrant.

a. **GARDNER** stated in one of these conversations that he had recently had sexual intercourse with a minor child and that he had taken pictures on some occasions of the children he was having sex with.

b. There was a discussion which mentioned **PERSON 2** getting together with **GARDNER** and having sexual intercourse with a minor male child and one with another. At times, **PERSON 2** stated he was traveling to Indiana and had traveled to Indiana. He even mentioned staying with friends in "TH" (which appears to be Terre Haute).

c. There was discussion of trading nude images and videos of minor male children. It appeared from the conversations that **GARDNER** and **PERSON 2** traded with one another images and videos of minor boys having sexual intercourse with minor boys or men. In many of the conversations, **GARDNER** mentioned his obsession of trying to find videos and/or images of minor boys.

51. Further investigation of the email address **PERSONAL ADDRESS 2** revealed a Facebook profile for a person having a name consistent with **PERSON 2**. According to his Facebook profile, **PERSON 2** is affiliated with Indiana.

52. Detective Cecil further found two emails sent form **GARDNER** to a user identified as **PERSON 3** utilizing the email address **PERSONAL ADDRESS 3**.[4] The first email, sent on September 8, 2012 at 5:03am, contained the following statement: "hey andy im gay too im 21 yr old (pthc)". The second email, sent on September 8, 2012 at 10:42am, contained the following statement: "hey andy im gay too im 21 yr old (pthc)!!".

53. Detective Sergeant Jennifer Barnes conducted a forensic examination on the black HP laptop computer. Detective Sergeant Barnes confirmed that there was no child pornography

4 The actual name and email address of Person 3 will remain confidential for purposes of this arrest warrant.

Case 1:13-cr-00152-TWP-MJD Document 1 Filed 12/12/13 Page 14 of 18 PageID #: 14

on the HP laptop in the current user files and folders created after the reinstallation of the operating system. Detective Sergeant Barnes determined that the most recent operating system had been reinstalled on or about November 14, 2012.

54. Detective Sergeant Barnes found evidence of the installation of multiple different P2P file sharing programs on the black HP laptop computer. In addition, she reported finding the GUID **2CDC804C4E453DE435947C937D9C1B00** which was the same GUID of the computer from which Detective Cecil connected to during the course of the undercover operation.

55. Detective Sergeant Barnes conducted forensics on the HP laptop computer and found images and videos of child pornography, including images saved to the root of the recovery partition of the computer. One of the recovered folders was named “mixed and sorted”, and included following files:

a. **1180841183683.jpg**

*The image depicts a nude prepubescent child with arms bound behind his/her back with rope. An adult penis is being inserted into the anal area of the minor child.*

b. **1181352709351.jpg**

*The image depicts a nudge prepubescent child laying on his/her stomach with arms bound behind his/her back with duct tape. The child's legs are being stretched apart with rope, revealing the minor child's anal and/or pubic area.*

c. **1182716773803.jpg**

*The image depicts a nudge prepubescent child laying on his/her back. The child's legs are being stretched apart with rope, revealing the minor child's anal and/or pubic area. The child's face is covered.*

d. **Babyshi-helpless006.jpg**

*The image depicts a nudge prepubescent child leaning forward on some item covered by a blue blanket. The*

*child's legs are bound and stretched apart. An adult male is seen inserting his fingers into the anal and/or public area of the child.*

e. **Babyshi-helpless010.jpg**

*The image depicts a nudge prepubescent child leaning forward on some item covered by a blue blanket. The child's legs are bound and stretched apart. An adult male is seen inserting his penis into the anal and/or public area of the child.*

f. **Goldi_tied+and+hanging.jpg**

*The image depicts a nudge prepubescent child that is bound, gagged and hanging upside-down by rope. The genital and/or pubic region is visible.*

56. After an examination of the internet activity on the black HP laptop computer, Detective Sergeant Barnes found evidence of searches for child pornography utilizing various internet search engines. In addition, Detective Sergeant Barnes found a search for "Anderson Indiana daycare help" in the search terms.

**D. <u>Follow Up to 1723 West 10th Street Investigation – February 25, 2013</u>**

57. On February 25, 2013, law enforcement conducted a follow up interview with **GARDNER** at his residence at 1723 West 10th Street, Anderson, Indiana. **GARDNER** was again advised that he was not under arrest and did not have to speak with law enforcement. **GARDNER** consented to an interview with law enforcement in the law enforcement vehicle.

58. **GARDNER** admitted to installing prior versions of Windows. He admitted that he downloaded child pornography to his HP laptop computer and then would move the files to a thumbdrive. **GARDNER** stated that he reinstalled Windows again when he gave the computer to Petry.

59. When told that forensics revealed that the operating system had been reinstalled

on or about November 14, 2012, **GARDNER** admitted that would have been about the time he gave the HP computer to Petry. **GARDNER** stated that Petry gave **GARDNER** Percocet in exchange for the laptop.

60. Detective Cecil showed **GARDNER** pieces of paper containing multiple images of child pornography in gallery form that had been found on the HP laptop computer. Detective Cecil also showed **GARDNER** printed copies of child pornographic videos which depicted random frames. All of these images depicted nudge, prepubescent minor children, exposing their genital or pubic area. **GARDNER** signed his name, date and time on those images and videos which he recognized, including "Zachs movie_0001.wmv" (described above).

61. **GARDNER** admitted that he downloaded these images and videos that he signed. **GARDNER** admitted to downloading the video "Zachs movie_0001.wmv". He stated that he used Windows Movie Maker to view the video and changed the file name. He stated that he did not create the video.

62. **GARDNER** admitted receiving the September 18, 2012 email from **PERSON 1** with the **PERSONAL ADDRESS 1**.

63. **GARDNER** admitted to initiating a chat conversation with **PERSON 2** with the mail address **PERSONAL ADDRESS 2**. **GARDNER** admitted to trading videos with **PERSON 2**. **GARDNER** admitted to discussing having sexual intercourse with a boy with **PERSON 2**.

64. **GARDNER** admitted that he may have sent **PERSON 2** approximately 20-40 pictures and 5-10 videos. **GARDNER** admitted that **PERSON 2** may have sent **GARDNER** approximately 3 or 4 pictures and videos.

65. When discussing the email to **PERSON 3** on September 8, 2012, **GARDNER**

admitted that he knew that the term "PTHC" meant child pornography although he did not know what the acronym meant. **GARDNER** stated that searching "PTHC" in a P2P file sharing program came up with all kinds of search results, including "preteen hardcore". **GARDNER** stated that one of the pictures he downloaded via P2P file sharing had the email address **PERSONAL ADDRESS 3**, consistent with that of **PERSON 3**.

66. **GARDNER** admitted to using internet search engines to find child pornography, and used the term "PTHC" in doing so. **GARDNER** stated that he knew a search of the term "PTHC" would show pictures of young children.

67. **GARDNER** admitted to searching for "Anderson Indiana daycare help" via an internet search engine.

68. **GARDNER** admitted to downloading the P2P programs that Detective Sergeant Barnes had determined were installed on the black HP laptop computer.

## III. CONCLUSION

69. Based on the foregoing, it is my belief that probable cause exists that:

a. **COUNT 1:** Between on or about September 18, 2012 and September 19, 2012, at Anderson, Indiana in the Southern District of Indiana, **GARDNER** knowingly received visual depictions of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252(a)(2).

b. **COUNT 2:** Between on or about January 1, 2012 and on or about November 14, 2012, at Anderson, Indiana in the Southern District of Indiana, **GARDNER** knowingly possessed visual depictions of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252(a)(4)(B).

70. Accordingly, I respectfully request this Court to issue an Arrest Warrant and Criminal Complaint charging **GARDNER** with one count of receipt and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B).

Michael Johnson
Special Agent
Department of Homeland Security
U.S. Homeland Security Investigations

Subscribed and sworn before me this 20th day of June, 2013.

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION
2013 DEC 17 PM 2:43
SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:13-cr- |
| RICHARD ZACHARY GARDNER, | ) | 1:13-cr-0251 TWP -MJD |
| Defendant. | ) | |

**PLEA AGREEMENT**

The United States of America, by counsel, Joseph H. Hogsett, United States Attorney for the Southern District of Indiana, and MaryAnn T. Mindrum, Assistant United States Attorney, and the defendant, RICHARD ZACHARY GARDNER, in person and by counsel, Bill Dazey, hereby inform the Court that a Plea Agreement has been reached in this cause pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The following are its terms and conditions:

1. **Plea of Guilty to the Information**: The defendant agrees to waive indictment by a federal grand jury and plead guilty to Count 1 of the Information, which charges that the defendant knowingly received child pornography, in violation of 18 U.S.C. § 2252(a)(2).

**A. Potential Penalties**: Count 1 may be punished by a term of imprisonment of between five (5) and twenty (20) years, a fine of up to $250,000, and a term of supervised release following any term of imprisonment for five (5) years up to the life of the defendant.

**B. Elements of Count 1:** To sustain the offense charged in Count 1 of the Information, the government must prove the following propositions beyond a reasonable doubt:

FIRST: the defendant knowingly received material containing one or more visual depictions;

SECOND: the visual depiction had been (a) mailed; (b) shipped or transported using

any means or facility of interstate or foreign commerce; (c) shipped or transported in or affecting interstate or foreign commerce, or (d) produced using materials that had been mailed, or so shipped or transported;

THIRD: the visual depiction was of a minor engaged in sexually explicit conduct; and

FOURTH: the defendant knew that at least one of the persons in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct.

## GENERAL PROVISIONS

2. **Rule 11(c)(1)(C):** The defendant understands that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(C) and that the parties have agreed upon the specific sentencing range set forth in this Plea Agreement. The parties understand that the Court must accept or reject the sentencing range specified in this Plea Agreement. If the Court rejects this Plea Agreement, then either party may withdraw from this Plea Agreement.

3. **Plea Agreement Based on Information Presently Known:** The defendant recognizes and understands that this Plea Agreement is based upon the information presently known to the United States Attorney for the Southern District of Indiana.

## SPECIFIC PROVISIONS

4. **Counts of Conviction:** The defendant will enter a plea of guilty to Count 1 of the Information.

5. **Sentencing Recommendation Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C):**

A. **Imprisonment:** At the time of sentencing, the defendant understands that the Court should sentence the defendant to a term of imprisonment between seventy (70) and eighty-seven (87) months.

B. **Lifetime Supervised Release:** Both parties reserve the right to present evidence and argument on the issue of the term of supervised release following the term of imprisonment.

6. **Special Conditions of Supervised Release:** The parties agree that the Court should impose the Special Conditions of supervised release listed below, in addition to any other Standard and Special Conditions which the Court deems appropriate in this case. The parties also recognize that the Court has the authority to modify terms of supervised release as provided in 18 U.S.C. § 3583.

A. **Pornography Prohibition:** The defendant shall not possess any obscenity, pornography, erotica, or nude images. Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

B. **Sexual Disorders Treatment:** The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer. The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer.

C. **No Unsupervised Contact with Minors:** The defendant shall not have any unsupervised contact with any minor child, unless the contact has been disclosed to and approved by the probation officer. In determining whether to approve such contacts involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about defendant's conviction in this case and the fact that the defendant is under supervision. If this notification has been made, and if the person having

custody consents to the contact, then this condition is not intended to prevent approval of the contact.

**D. Sex Offender Registration:** The defendant shall register as a sex offender with the appropriate authorities of any state in which he resides, is employed, or attends school as required by both federal and state law, including the Sex Offender Registration and Notification Act (SORNA) at 42 U.S.C. §16901, et seq.

**E. Consent to Searches:** The defendant shall submit to the search by the probation officer of defendant's person, vehicle, office/business, residence, and property, including any computer systems and its peripheral devices with the assistance of other law enforcement as necessary. The defendant shall submit to the seizure of contraband found by the probation officer. The defendant shall warn other occupants the premises may be subject to searches.

**F. DNA Sample:** The defendant shall provide a DNA sample as directed by the probation officer.

**G. Computer Monitoring:** The defendant shall consent, at the direction of the probation officer, to having installed on defendant's computer(s) and any hardware or software, systems to monitor the defendant's computer use. Monitoring will occur on a random and/or regular basis. The defendant will warn other occupants of the existence of the monitoring software placed on defendant's computer(s).

7.     **Fine:** Both parties reserve the right to present evidence and arguments concerning whether the Court should impose a fine in this case and the amount of any such fine. The defendant understands that the amount and payment terms of any fine will be determined by the Court.

8. **Restitution:** The parties understand that federal law requires mandatory restitution for the offenses charged in the Information pursuant to Title 18, United States Code Section 3663A. The parties reserve the right to present evidence and arguments concerning the amount and payment terms of any potential restitution to the victims in the child pornography. In addition, the defendant agrees to pay restitution as follows:

    A. The defendant will pay $5,000 to each and every other identified victim in the child pornography involved in Count 1 of the Information, if any such victim can be identified and they make a claim for such restitution based upon their prior damages relating to these offenses and any future counseling expenses or other damages.

    B. The parties understand that the government has not yet determined through its investigation whether any other victims can be identified or will seek such restitution.

    C. To make restitution payments, the defendant agrees to remit to the Court at the time of sentencing, or as directed by the Court, a check or money order in the amount of the restitution. This check or money order should be made payable to the Clerk of the United States District Court.

    D. The government agrees to consider the amount of any restitution ordered in making its fine recommendation. However, the government retains the right to determine what effect, if any, the amount of restitution may have in its recommendation.

9. **Mandatory Special Assessment:** The defendant agrees to remit to the Court at the time of sentencing or as directed by the Court a certified check or money order in the amount of $100, payable to Clerk, United States District Court, which amount represents the mandatory special assessment that must be imposed by the Court and paid by all federal defendants pursuant

to Title 18, United States Code, Section 3013. If the defendant is unable to pay this amount as specified, then he agrees to make payment as ordered by the Court.

10. **Forfeiture:** The defendant hereby admits that the personal property taken from the defendant or defendant's residence(s) during the searches by law enforcement officers in this case and obtained by law enforcement officers was used to facilitate and was used or was intended to be used in the commission of the offense to which the defendant is pleading guilty, and that the property is therefore subject to forfeiture pursuant to Title 18, United States Code, Sections 2253 and/or 2254. Therefore, the defendant hereby abandons all right, title and interest in all such personal property, including, but not necessarily limited to, computer equipment, computer storage media, monitors, and computer files, so that proper disposition, including destruction, may be made thereof by federal, state, or local law enforcement agencies involved in the investigation of the defendant's criminal activity. The defendant further agrees not to contest any forfeiture action brought against any of the seized personal property, whether any such forfeiture action is administrative or judicial, civil or criminal, and agrees not to contest any use or destruction of any of the seized personal property by any federal, state or local law enforcement agency.

11. **Obligation to Pay Financial Component of Sentence**: If the defendant is unable to pay any financial component of the sentence on the date of sentencing, then he agrees that the payment of the financial component should be a condition of his supervised release as well as an ordered payment through the Inmate Financial Responsibility Program of the U.S. Bureau of Prisons. The defendant would have a continuing obligation to pay the financial component of his sentence. The defendant further agrees that as of the date of filing this plea agreement he will provide all requested financial information to the Financial Litigation Unit of the United States Attorney's Office for the Southern District of Indiana for use in the collection of any fines and restitution imposed by the Court and authorizes the Financial Litigation Unit to obtain credit

reports relating to the defendant for use in the collection of any fines and restitution imposed by the Court.

12. **Potential Civil Commitment:** The defendant has been advised, and understands, that pursuant to 18 U.S.C. § 4248, the defendant faces potential civil commitment as a sexually dangerous person following the expiration of the defendant's term of imprisonment. The defendant understands that any potential civil commitment would be the subject of a separate civil proceeding. The defendant further understands that no one, including the defendant's attorney or the Court, can predict with certainty the effect of the defendant's conviction on such a civil commitment determination or the likelihood that civil commitment would be imposed. The defendant understands that civil commitment can be imposed for an indefinite period of time. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any potential civil commitment consequences that the defendant's plea may entail.

13. **Background Information:** The defendant acknowledges and understands that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the defendant for the purpose of imposing an appropriate sentence. The defendant acknowledges and understands that the United States is not prohibited from providing information concerning background, character, and conduct of the defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

14. **Compliance with Federal and State Laws:** The defendant understands that the obligations of the Government in this Plea Agreement are expressly contingent upon the defendant abiding by federal and state laws.

15. **No Protection from Prosecution for Unknown or Subsequent Offense:** The defendant acknowledges and agrees that nothing in this Plea Agreement shall protect the defendant in any way from prosecution for any offense not specifically covered by this agreement,

or not known the Government at this time. The defendant further acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement.

16. **No Further Charges**: The United States Attorney for the Southern District of Indiana agrees not to file any further charges against the defendant for advertising, distributing, receiving, transporting and possessing child pornography arising from his presently known criminal conduct in the Southern District of Indiana, provided that the Court accepts this Plea Agreement and sentences the defendant as described above. **Excluded Offenses:** The defendant has denied producing any child pornography or engaging in any unlawful sexual contact with a minor or adult, or attempting or conspiring to do so (hereinafter the "Excluded Offenses"). The defendant understands that this limitation on the bringing of new charges does not restrict in any way the government's right to pursue criminal charges for the Excluded Offenses, if such charges are discovered at any point before, during or after the conclusion of the above-entitled action. In addition, this provision does not restrict the right of the United States Attorney to bring any other charges against the defendant for any undisclosed or unknown criminal offenses, any other crime of violence or any sex offense, if the defendant has committed any such offenses prior to this Plea Agreement or commits such offenses in the future. Finally, if the Court rejects this Plea Agreement, then the United States Attorney will not be bound by this Plea Agreement in any way and may seek to bring additional charges.

17. **Good Behavior Requirement**: The defendant agrees to commit any new federal, state or local offenses and to fully comply with all conditions release while this case is pending. Violation of this condition will relieve the government of its obligations under this agreement.

18. **Waiver of Appeal:** The defendant understands that the defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was

determined. Acknowledging this right, and in exchange for the concessions made by the Government in this Plea Agreement, the defendant agrees that in the event the Court accepts this Plea Agreement under Rule 11(c)(1)(C) and sentences the defendant to a term of imprisonment between seventy (70) and eighty-seven (87) months, regardless of how the sentence is calculated by the Court, then the defendant expressly waives the right to appeal the conviction and sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. Additionally, the defendant expressly agrees not to contest the conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, an action brought 28 U.S.C. § 2255. This waiver of appeal specifically includes all provisions of the sentence imposed in this case, including the terms of the supervised release and the amount of any restitution, fine or forfeiture. This Section 2255 waiver does not encompass claims that the defendant received ineffective assistance of counsel in the negotiation of the plea or Plea Agreement.

## SENTENCING GUIDELINES STIPULATIONS

19.     Pursuant to § 6B1.4 of the Sentencing Guidelines, the parties agree to the Stipulations below. The parties understand and agree that these Stipulations are binding on the parties, but are only a recommendation to the Court and that the Court will determine the sentencing guidelines applicable in this case. The parties agree that no stipulation regarding any factors in Chapter 4, Criminal History Category, of the Sentencing Guidelines has been made, and that such determination will be made by the Court.

A. **Base Offense Level:** The base offense level for the offense charged is level twenty (20). U.S.S.G. §§ 2G2.2(a)(2) & (b)(1).

B. **Age of Victims:** U.S.S.G. § 2G2.2(b)(2) applies to this offense because the material involved prepubescent minors or minors who had not attained the age of 12 years. This results in a further two (2) level increase in the offense level.

C. **Sadistic or Masochistic Conduct:** U.S.S.G. § 2G2.2(b)(4) applies to this offense because the child pornography included material that portrayed sadistic or masochistic conduct or other depictions of violence. This results in a four (4) level increase in the offense level.

D. **Use of Computer:** U.S.S.G. § 2G2.2(b)(6) applies to this offense because the defendant used a computer to distribute, receive and possess the material. This results in a further two (2) level increase in the offense level.

E. **Number of Images:** U.S.S.G. § 2G2.2(b)(7)(A) applies to this offense because the offense involved at least 10 but fewer than 150 images of child pornography. This results in a further two (2) level increase in the offense level.

F. **Total Offense Level for the Information:** In total, the offense in Count 1 of the Information carries a combined offense level of thirty (30), pursuant to Chapters Two and Three of the U.S. Sentencing Guidelines.

G. **Acceptance of Responsibility:** To date, the defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the criminal conduct set forth in the Information. Based upon defendant's willingness to accept a plea agreement and enter a plea of guilty to the criminal conduct noted in this agreement, the Government agrees that the defendant should receive a two (2) level reduction *provided* the defendant satisfies the criteria set forth in Guideline § 3E1.1(a) & (b) up to and including the time of sentencing. The defendant timely notified the Government of defendant's intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently. After the defendant enters a plea of guilty, the government intends to file a motion pursuant to U.S.S.G. §

3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level.   The parties reserve the right to present evidence and arguments concerning defendant's acceptance of responsibility at the time of sentencing.

      H.  **Final Offense Level:**  Based upon all of these stipulations, then the defendant faces a final offense level of twenty-seven (27).

**FINAL PROVISION**

20 MM 12/13/13 ~~23~~. **Complete Agreement:** The defendant acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the defendant to plead guilty. This document is the complete and only plea agreement between the defendant and the United States Attorney for the Southern District of Indiana, and is binding only on the parties to this agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified except in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

JOSEPH H. HOGSETT
United States Attorney

12/13/13
DATE

MaryAnn T. Mindrum
Assistant U.S. Attorney

12.13.13
DATE

Joe H. Vaughn
Chief, Criminal Division

12-12-13
DATE

RICHARD ZACHARY GARDNER
Defendant

12-13-13
DATE

William H. Dazey, Jr.
Attorney for Defendant

**STATEMENT OF THE DEFENDANT**

I have read the entire Plea Agreement and discussed it with my attorney.

I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

I am fully satisfied with my attorney's representation during all phases of this case.

I am freely and voluntarily pleading guilty in this case.

I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime(s) to which I am entering my plea(s).

My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement. If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within 14 days of the entry of the judgment in this case; I further understand that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done. I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

Finally, my attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation officer, then the Court may increase my sentence.

_________ DATE

Richard Gardner
RICHARD ZACHARY GARDNER
Defendant

1413 MH 12/13/13

AO 245B (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

**SOUTHERN** District of **INDIANA**

UNITED STATES OF AMERICA
**V.**
RICHARD ZACHERY GARDNER

**JUDGMENT IN A CRIMINAL CASE**

Case Number: 1:13CR00251-001

USM Number: 11514-028

William H. Dazey, Jr.
Defendant's Attorney

**THE DEFENDANT:**

X pleaded guilty to count(s) 1

G pleaded nolo contendere to count(s) ____ which was accepted by the court.

G was found guilty on count(s) ____ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count(s) |
|---|---|---|---|
| 18 U.S.C. § 2252(a)(2) | Receipt of Child Pornography | 9/19/12 | 1 |

The defendant is sentenced as provided in pages 2 through 5 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

G The defendant has been found not guilty on count(s) ____

G Count(s) ____ G is G are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

3/11/2014
Date of Imposition of Judgment

Tanya Walton Pratt
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

03/17/2014
Date

A CERTIFIED TRUE COPY
Laura A. Briggs, Clerk
U.S. District Court
Southern District of Indiana
By Laura R. Genis
Deputy Clerk

Case 1:13-cr-00251-TWP-MJD Document 58 Filed 03/12/14 Page 2 of 5 PageID #: 282

AO 245B (Rev. 09/11) Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT: RICHARD ZACHERY GARDNER
CASE NUMBER: 1:13CR00251-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: 70 months

X The court makes the following recommendations to the Bureau of Prisons:
That the defendant be designated to a facility in Elkton, Ohio, or any institution maintaining a sex offender management program, at the lowest security designation possible.

G The defendant is remanded to the custody of the United States Marshal.

X The defendant shall surrender to the United States Marshal for this district:

X at 2:48 G a m. X p m. on March 11, 2014 .

G as notified by the United States Marshal.

G The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

G before 2 p.m. on ________ .

G as notified by the United States Marshal.

G as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ________ to ________

a ________ , with a certified copy of this judgment.

________
UNITED STATES MARSHAL

By ________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: RICHARD ZACHERY GARDNER
CASE NUMBER: 1:13CR00251-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : 10 years

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

G The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

G The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.)* as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. (Check, if applicable.)

G The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT: RICHARD ZACHERY GARDNER
CASE NUMBER: 1:13CR00251-001

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall pay any fine that is imposed by this judgment and that remains unpaid at the commencement of the term of supervised release.

2. The defendant shall provide the probation officer access to any requested financial information.

3. The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer.

4. The defendant shall participate in a substance abuse treatment program at the direction of the probation officer, which may include no more than eight drug tests per month. The defendant shall abstain from the use of all intoxicants, including alcohol, while participating in a substance abuse treatment program. The defendant is responsible for paying a portion of the fees of substance abuse testing and/or treatment.

5. The defendant shall submit to the search (with the assistance of other law enforcement as necessary) of his person, vehicle, office/business, residence and property, including computer systems and peripheral devices. The defendant shall submit to the seizure of contraband found. The defendant shall warn other occupants the premises may be subject to searches.

6. The defendant shall not possess/use a computer unless he agrees to comply with the Computer Restriction and Monitoring Program at the direction of the probation officer. Monitoring will occur on a random or regular basis. The defendant shall advise the probation office of all computers available to him for use. Any computer or Internet-enabled device the defendant is found to have used and has not disclosed shall be considered contraband and may be confiscated by the probation officer. The defendant shall warn other occupants of the existence of the monitoring software placed on his computer.

7. The defendant shall not possess any pornography, erotica or nude images. Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

8. The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer. The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer.

9. The defendant shall not have any unsupervised contact with any minor child, unless the contact has been disclosed to and approved by the probation officer. In determining whether to approve such contacts involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about his conviction in this case and the fact that he is under supervision. If this notification has been made, and if the person having custody consents to the contact then this condition is not intended to prevent approval of the contact.

10. The defendant shall register as a sex offender with the appropriate authorities of any state in which he resides, is employed, or attends school.

11. The defendant shall pay any outstanding location monitoring fees that were accrued while on pretrial supervision.

12. The defendant shall have no contact with Lee Petry or any individuals who may bring him into contact with Lee Petry.

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_______________________________ _______________
Defendant Date

_______________________________ _______________
U.S. Probation Officer/Designated Witness Date

DEFENDANT: RICHARD ZACHERY GARDNER
CASE NUMBER: 1:13CR00251-001

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ 30,000.00 |

G The determination of restitution is deferred until ______. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

X The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(I), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Victim of “Cindy Series” | $5,000.00 | $5,000.00 | |
| John Doe 1 of “8 Kids Series” | $5,000.00 | $5,000.00 | |
| John Doe 2 of “8 Kids Series” | $5,000.00 | $5,000.00 | |
| John Doe 3 of “8 Kids Series” | $5,000.00 | $5,000.00 | |
| John Doe 4 of ”8 Kids Series” | $5,000.00 | $5,000.00 | |
| John Doe 5 of “8 Kids Series” | $5,000.00 | $5,000.00 | |
| **TOTALS** | $ 30,000.00 | $ 30,000.00 | |

G Restitution amount ordered pursuant to plea agreement $ ______________

The defendant shall pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

X The court determined that the defendant does not have the ability to pay interest and it is ordered that:

X the interest requirement is waived for the G fine X restitution.

G the interest requirement for the G fine G restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: RICHARD ZACHERY GARDNER
CASE NUMBER: 1:13CR00251-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A** G Lump sum payment of $ ______________ due immediately, balance due

G not later than ______________________ , or
G in accordance with G C, G D, G E, or G G below; or

**B** X Payment to begin immediately (may be combined with G C, G D, or X G below); or

**C** G Payment in equal __________ (e.g., weekly, monthly, quarterly) installments of $ __________ over a period of __________ (e.g., months or years), to commence __________ (e.g., 30 or 60 days) after the date of this judgment; or

**D** G Payment in equal __________ (e.g., weekly, monthly, quarterly) installments of $ __________ over a period of __________ (e.g., months or years), to commence __________ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E** G Payment during the term of supervised release will commence within __________ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** G If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the restitution ordered herein and the Court may order such payment in the future.

**G** X Special instructions regarding the payment of criminal monetary penalties:

Any unpaid restitution balance during the term of supervision shall be paid at a rate of not less than 10% of the defendant's gross monthly income.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

G Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

| Defendant Name | Case Number | Joint & Several Amount |
|---|---|---|

G The defendant shall pay the cost of prosecution.

G The defendant shall pay the following court cost(s):

X The defendant shall forfeit the defendant's interest in the following property to the United States:
Any materials or property used or intended to be used in the offense, including all child pornography and erotica, a Hewlett Packard laptop, and a SanDisk 8GB thumb drive seized by the government on July 7 and November 26, 2012.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.