# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cr-0124-TWP-TAB |
| | ) | |
| WILLIAM DONALD HORNER, | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

The United States of America, by counsel, Joseph H. Hogsett, United States Attorney for

the Southern District of Indiana, and MaryAnn T. Mindrum, Assistant United States Attorney, and

the defendant, WILLIAM DONALD HORNER, in person and by counsel, Monica Foster, Chief

Indiana Federal Community Defender, hereby inform the Court that a Plea Agreement has been

reached in this cause pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).   The following

are its terms and conditions:

1.      **Plea of Guilty to the Information**:   The defendant agrees to waive indictment by

a federal grand jury and plead guilty to Count 1 of the Information, which charges that the

defendant knowingly possessed child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

**A. Potential Penalties**: Count 1 may be punished by a term of imprisonment of up to

ten (10) years, a fine of up to $250,000, and a term of supervised release following any term of

imprisonment for five (5) years up to the life of the defendant.

**B. Elements of Count 1:**   To sustain the offense charged in Count 1, a violation of 18

U.S.C. § 2252(a)(4)(B) (possession), the government must prove the following propositions

beyond a reasonable doubt:

FIRST:        the defendant knowingly possessed material containing one or more visual

1

depictions;

| | |
|---|---|
| SECOND: | the visual depiction had been (a) mailed; (b) shipped or transported using any means or facility of interstate or foreign commerce; (c) shipped or transported in or affecting interstate or foreign commerce, or (d) produced using materials that had been mailed, or so shipped or transported; |
| THIRD: | the visual depiction was of a minor engaged in sexually explicit conduct; and |
| FOURTH: | the defendant knew that at least one of the performers in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct. |

## GENERAL PROVISIONS

2.   **Sentencing Court Not Bound by Guidelines or Recommendations:**   The defendant acknowledges that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(B) and that the determination of his sentence is within the discretion of the Court.   The defendant understands that if the Court decides to impose a sentence higher or lower than any recommendation of either party, or determines a different advisory sentencing guideline range applies in this case, or decides to depart from the otherwise applicable advisory sentencing guideline range for any reason, then the defendant will not be permitted to withdraw defendant's plea of guilty for that reason and will be bound by defendant's plea of guilty.

3.   **Sentencing Court's Discretion Within the Statutory Range:**   The defendant agrees and understands that the Court will use its discretion to fashion a sentence within the statutory range set forth in Paragraph 1.   The defendant agrees and understands that the Court will consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence within the statutory range.   The defendant agrees and understands that the Court will also consult and take into account the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") in determining the appropriate sentence within the statutory range.   The defendant agrees and understands that the Sentencing Guidelines are not mandatory or binding on the Court,

2

but are advisory in nature. The defendant agrees and understands that the final determination of the sentence, including the applicable advisory guideline calculation, criminal history category, and advisory sentencing guideline range will be made by the Court.

4. **Plea Agreement Based on Information Presently Known:** The defendant recognizes and understands that this Plea Agreement is based upon the information presently known to the United States Attorney for the Southern District of Indiana.

### SPECIFIC PROVISIONS

5. **Counts of Conviction:** The defendant will enter a plea of guilty to Count 1 of the Information.

6. **Sentencing Recommendation Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):** At the time of sentencing, the defendant understands that the Government will recommend a sentence within the advisory Sentencing Guidelines range consistent with the stipulations stated herein. The Government reserves the right to present evidence and argument on the issue of sentence. The defendant is free to request whatever sentence the defendant deems appropriate, including one below the advisory guidelines range, and reserves the right to present evidence and argument in such regard.

7. **Lifetime Supervised Release:** The parties will recommend that the Court impose a term of supervised release following the term of imprisonment to last for the remainder of the defendant's life.

8. **Special Conditions of Supervised Release:** The parties jointly recommend that the Court should impose the Special Conditions of supervised release listed below, in addition to any other Standard and Special Conditions which the Court deems appropriate in this case. The parties understand and agree that these recommended Special Conditions are **not binding** upon the Court if it accepts this Guilty Plea Agreement, and that the Court may determine which Standard

3

and Special Conditions to apply in this case.   The parties also recognize that the Court has the

authority to modify terms of supervised release as provided in 18 U.S.C. § 3583.

    **A.  Pornography Prohibition:**   The defendant shall not possess any obscenity,

pornography, erotica, or nude images.   Any such material found in the defendant's possession

shall be considered contraband and may be confiscated by the probation officer.

    **B.  Sexual Disorders Treatment:**   The defendant shall participate in a program of

treatment for sexual disorders, including periodic polygraph examinations, as directed by the

probation officer.   The Court authorizes the release of the presentence report and available

psychological evaluations to the mental health provider, as approved by the probation officer.

    **C.  No Unsupervised Contact with Minors:**   The defendant shall not have any

unsupervised contact with any minor child, unless the contact has been disclosed to and approved

by the probation officer.   In determining whether to approve such contacts involving members of

the defendant's family, the probation officer shall determine if the defendant has notified the

persons having custody of any such minors about defendant's conviction in this case and the fact

that the defendant is under supervision.   If this notification has been made, and if the person

having custody consents to the contact, then this condition is not intended to prevent approval of

the contact.

    **D.  Sex Offender Registration:**   The defendant shall register as a sex offender with

the appropriate authorities of any state in which he resides, is employed, or attends school as

required by both federal and state law, including the Sex Offender Registration and Notification

Act (SORNA) at 42 U.S.C. §16901, et seq.

    **E.  Consent to Searches:**   The defendant shall submit to the search by the probation

officer of defendant's person, vehicle, office/business, residence, and property, including any

computer systems and its peripheral devices with the assistance of other law enforcement as

necessary. The defendant shall submit to the seizure of contraband found by the probation officer. The defendant shall warn other occupants the premises may be subject to searches.

     **F. DNA Sample:** The defendant shall provide a DNA sample as directed by the probation officer.

     **G. Computer Monitoring:** The defendant shall consent, at the direction of the probation officer, to having installed on defendant's computer(s) and any hardware or software, systems to monitor the defendant's computer use. Monitoring will occur on a random and/or regular basis. The defendant will warn other occupants of the existence of the monitoring software placed on defendant's computer(s).

    9.    **Fine:** Both parties reserve the right to present evidence and arguments concerning whether the Court should impose a fine in this case and the amount of any such fine.

    10.    **Restitution:** The parties understand that federal law requires mandatory restitution for the offenses charged in the Information pursuant to Title 18, United States Code Section 3663A. The parties reserve the right to present evidence and arguments concerning the amount and payment terms of any potential restitution to the victims in the child pornography. In addition, the defendant agrees to pay restitution as follows:

    A. The defendant will pay $2,500 to each and every other identified victim in the child pornography involved in Count 1 of the Information, if any such victim can be identified and they make a claim for such restitution based upon their prior damages relating to these offenses and any future counseling expenses or other damages.

    B. The parties understand that the government has not yet determined through its investigation whether any other victims can be identified or will seek such restitution.

C. To make restitution payments, the defendant agrees to remit to the Court at the time of sentencing, or as directed by the Court, a check or money order in the amount of the restitution. This check or money order should be made payable to the Clerk of the United States District Court.

D. The government agrees to consider the amount of any restitution ordered in making its fine recommendation. However, the government retains the right to determine what effect, if any, the amount of restitution may have in its recommendation.

11. **Mandatory Special Assessment:** The defendant agrees to remit to the Court at the time of sentencing or as directed by the Court a certified check or money order in the amount of $100, payable to Clerk, United States District Court, which amount represents the mandatory special assessment that must be imposed by the Court and paid by all federal defendants pursuant to Title 18, United States Code, Section 3013 for Count 1 of the Information.

12. **Financial Information:** The defendant agrees that as of the date of filing this plea agreement, the defendant will provide all requested financial information to the Financial Litigation Unit of the United States Attorney's Office for the Southern District of Indiana for use in the collection of any fines and/or restitution imposed by the Court and authorizes the Financial Litigation Unit to obtain credit reports relating to the defendant for use in the collection of any fines and/or restitution imposed by the Court.

13. **Forfeiture:** The defendant hereby admits that the property taken from the defendant or defendant's residence(s) during the searches by law enforcement officers in this case and obtained by law enforcement officers was used to facilitate and was used or was intended to be used in the commission of the offense to which the defendant is pleading guilty, and that the property is therefore subject to forfeiture pursuant to Title 18, United States Code, Sections 2253 and/or 2254. Therefore, the defendant hereby abandons all right, title and interest in all such

6

personal property, including, but not necessarily limited to, computer equipment, computer

storage media, monitors, and computer files, so that proper disposition, including destruction, may

be made thereof by federal, state, or local law enforcement agencies involved in the investigation

of the defendant's criminal activity.   The defendant further agrees not to contest any forfeiture

action brought against any of the seized personal property, whether any such forfeiture action is

administrative or judicial, civil or criminal, and agrees not to contest any use or destruction of any

of the seized personal property by any federal, state or local law enforcement agency.

14.   **Obligation to Pay Financial Component of Sentence**:   If the defendant is unable

to pay any financial component of the sentence on the date of sentencing, then the defendant agrees

that there is a continuing obligation to pay the financial component of the sentence.

15.   **Potential Civil Commitment**:   The defendant has been advised, and understands,

that pursuant to 18 U.S.C. § 4248, the defendant faces potential civil commitment as a sexually

dangerous person following the expiration of the defendant's term of imprisonment.   The

defendant understands that any potential civil commitment would be the subject of a separate civil

proceeding.   The defendant further understands that no one, including the defendant's attorney or

the Court, can predict with certainty the effect of the defendant's conviction on such a civil

commitment determination or the likelihood that civil commitment would be imposed.   The

defendant understands that civil commitment can be imposed for an indefinite period of time.

The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any

potential civil commitment consequences that the defendant's plea may entail.

16.   **Background Information**:   The defendant acknowledges and understands that no

limitation shall be placed upon the Court's consideration of information concerning the

background, character, and conduct of the defendant for the purpose of imposing an appropriate

sentence.   The defendant acknowledges and understands that the United States is not prohibited

from providing information concerning background, character, and conduct of the defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

17. **Compliance with Federal and State Laws:** The defendant understands that the obligations of the Government in this Plea Agreement are expressly contingent upon the defendant abiding by federal and state laws.

18. **No Protection from Prosecution for Unknown or Subsequent Offense:** The defendant acknowledges and agrees that nothing in this Plea Agreement shall protect the defendant in any way from prosecution for any offense not specifically covered by this agreement, or not known the Government at this time. The defendant further acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement.

19. **No Further Charges**: The United States Attorney for the Southern District of Indiana agrees not to file any further charges against the defendant for advertising, distributing, receiving, transporting and possessing child pornography arising from his presently known criminal conduct in the Southern District of Indiana, provided that the Court accepts this Plea Agreement. **Excluded Offenses:** The defendant has denied producing any child pornography or engaging in any unlawful sexual contact with a minor or adult, or attempting or conspiring to do so (hereinafter the "Excluded Offenses"). The defendant understands that this limitation on the bringing of new charges does not restrict in any way the government's right to pursue criminal charges for the Excluded Offenses, if such charges are discovered at any point before, during or after the conclusion of the above-entitled action. In addition, this provision does not restrict the right of the United States Attorney to bring any other charges against the defendant for any undisclosed or unknown criminal offenses, any other crime of violence or any sex offense, if the defendant has committed any such offenses prior to this Plea Agreement or commits such offenses

8

in the future.    Finally, if the Court rejects this Plea Agreement, then the United States Attorney

will not be bound by this Plea Agreement in any way and may seek to bring additional charges.

20.    **Good Behavior Requirement**:  The defendant agrees to commit any new federal,

state or local offenses and to fully comply with all conditions release while this case is pending.

Violation of this condition will relieve the government of its obligations under this agreement.

## SENTENCING GUIDELINES STIPULATIONS

21.    Pursuant to § 6B1.4 of the Sentencing Guidelines, the parties agree to the

Stipulations below.    The parties understand and agree that these Stipulations are binding on the

parties, but are only a recommendation to the Court and that the Court will determine the

sentencing guidelines applicable in this case.    The parties agree that no stipulation regarding any

factors in Chapter 4, Criminal History Category, of the Sentencing Guidelines has been made, and

that such determination will be made by the Court.

A.  **Base Offense Level:**    The base offense level for the offense charged is level

eighteen (18).    U.S.S.G. § 2G2.2(a)(1).

B.  **Age of Victims:**    U.S.S.G. § 2G2.2(b)(2) applies to this offense because the

material involved prepubescent minors or minors who had not attained the age of 12 years.    This

results in a further two (2) level increase in the offense level.

C.  **Sadistic or Masochistic Conduct:**    U.S.S.G. § 2G2.2(b)(4) applies to this offense

because the child pornography included material that portrayed sadistic or masochistic conduct or

other depictions of violence.    This results in a four (4) level increase in the offense level.

D.  **Use of Computer:**    U.S.S.G. § 2G2.2(b)(6) applies to this offense because the

defendant used a computer to distribute, receive and possess the material.    This results in a further

two (2) level increase in the offense level.

9

E. **Number of Images:** U.S.S.G. § 2G2.2(b)(7)(D) applies to this offense because the offense involved more than 600 files of child pornography. This results in a further five (5) level increase in the offense level.

F. **Total Offense Level for the Information:** In total, the offense in Count 1 of the Information carries a combined offense level of thirty-one (31), pursuant to Chapters Two and Three of the U.S. Sentencing Guidelines.

G. **Acceptance of Responsibility:** To date, the defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the criminal conduct set forth in the Information. Based upon defendant's willingness to accept a plea agreement and enter a plea of guilty to the criminal conduct noted in this agreement, the Government agrees that the defendant should receive a two (2) level reduction *provided* the defendant satisfies the criteria set forth in Guideline § 3E1.1(a) up to and including the time of sentencing. The defendant timely notified the Government of defendant's intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently. After the Defendant enters a plea of guilty, the government intends to file a motion pursuant to U.S.S.G. § 3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level. The parties reserve the right to present evidence and arguments concerning defendant's acceptance of responsibility at the time of sentencing.

H. **Final Offense Level:** Based upon all of these stipulations, then the defendant faces a final offense level of twenty-eight (28).

## WAIVER OF RIGHT TO APPEAL

22. The defendant understands that the defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined. Acknowledging this right, and in exchange for the concessions made by the Government in this

Plea Agreement, the defendant expressly waives the right to appeal the conviction imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. The defendant further agrees that in the event the Court sentences the defendant to a term of imprisonment within, or less than, the advisory sentencing guidelines range **for a total offense level of 28**, regardless of how the sentence is calculated by the Court, then the defendant expressly waives the right to appeal the conviction and sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. Additionally, the defendant expressly agrees not to contest the conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, an action brought under Title 28, United States Code, Section 2255. This waiver of appeal specifically includes all provisions of the sentence imposed in this case, including the terms of the supervised release and the amount of any restitution, fine or forfeiture.

//

//

//

//

//

//

//

//

//

//

//

//

//

## FINAL PROVISION

23.     **Complete Agreement:**   The defendant acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the defendant to plead guilty.   This document is the complete and only plea agreement between the defendant and the United States Attorney for the Southern District of Indiana, and is binding only on the parties to this agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified except in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

JOSEPH H. HOGSETT
United States Attorney

6/7/13
DATE

MaryAnn T. Mindrum
Assistant U.S. Attorney

6/7/2013
DATE

Joe H. Vaughn
Chief, Criminal Division

6/6/2013
DATE

WILLIAM DONALD HORNER
Defendant

6/6/2013
DATE

Monica Foster
Attorney for Defendant

## STATEMENT OF THE DEFENDANT

I have read the entire Plea Agreement and discussed it with my attorney.

I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

I am fully satisfied with my attorney's representation during all phases of this case.

I am freely and voluntarily pleading guilty in this case.

I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime(s) to which I am entering my plea(s).

My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement. If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within 14 days of the entry of the judgment in this case; I further understand that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done. I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

Finally, my attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation officer, then the Court may increase my sentence.

6/6/2013
DATE

WILLIAM DONALD HORNER
Defendant

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cr-00124-TWP-TAB |
| | ) | |
| WILLIAM DONALD HORNER, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by counsel, Joseph H. Hogsett, United States Attorney for

the Southern District of Indiana, and MaryAnn T. Mindrum, Assistant United States Attorney,

hereby submits its sentencing memorandum in this matter. The Defendant is scheduled to be

sentenced on February 27, 2014 for his possession of a large collection of child pornography

acquired through the Internet. This memorandum will address the relevant sentencing factors to

be considered pursuant to 18 U.S.C. § 3553(a). For the reasons listed below, a sentence within

the advisory sentencing guidelines of 78 to 97 months of imprisonment is appropriate, followed

by the jointly requested life term of supervised release. The Defendant has not provided any

legitimate basis for the court to impose a sentence lower than the advisory guidelines given the

gravity of his criminal behavior and the serious nature of child pornography offenses.

1

## I.      THE DEFENDANT'S CRIMINAL CONDUCT

On September 2, 2012, a computer tower was located in Indianapolis, Indiana ("Residence 1").  The tower was abandoned property by a former occupant, which Defendant later admitted was his previous residence.  A maintenance worker for the address located the tower and intended to use it for personal use.  Upon plugging the computer in and attaching a monitor, the maintenance worker was immediately confronted with images of a prepubescent female performing oral intercourse on an adult male penis.  The maintenance worker immediately took the computer to the Indianapolis Metropolitan Police Department ("IMPD"), where the computer was taken into the IMPD property room.  Defendant also later admitted that this computer was his.

On October 24, 2012, IMPD Detectives retrieved the computer from the IMPD property room and conducted forensic analysis on the computer.  Along with numerous thumbnail images of child pornography, a self-taken video was discovered featuring the Defendant masturbating in the video.  Further forensics produced full size images of child pornography and over 3,000 possible images of child pornography in the recycle bin of the computer.

On October 24, 2012, Detective Spivey sought and was granted a state search warrant for the residence located in Avon, Indiana ("Residence 2").  During the execution of the search warrant, two computers were located inside Residence 2.  One computer was in an office, surrounded by correspondence and personal effects of Defendant's fiancé.  The second computer was in a bedroom space, which had been converted into an office, which Defendant later admitted was his personal computer.

2

The computer utilized by Defendant contained over 600 images and videos of child pornography, including the following files:

- The file named "real lolicon 1(195).jpg" depicts a nude prepubescent boy, who is lying on his back with his legs apart. The image shows his uncovered genitals, which has ejaculate on them.

- The file named "real lolicon 1(313).jpg depicts a nude prepubescent female, who is lying on her stomach on a bed. A nude adult male with an erect penis is putting his hand on her buttocks and spreading it apart. An adult female is also shown in the image with her hand on the genital area of the minor as well.

- The file named "6yo sandy – fuck with dad.avi" is a video depiction of an adult male engaging in sexual intercourse with a prepubescent female.

- The file named "kitty1.mpg" is a video depiction of a very young prepubescent girl engaging in oral intercourse with an adult male.

Many of the images were located under the user name "Donnie" in a folder in the Documents folder called "New Folder."

On October 24, 2012, IMPD interviewed Defendant at Residence 2. Defendant waived his Miranda Rights and agreed to speak with law enforcement. The following is a summary of the recorded interview but does not contain every statement: During the interview, the Defendant admitted to having a problem with child pornography. He also admitted to owning the original computer at Residence, as well as the computer located at Residence 2.

Defendant admitted to knowingly and intentionally searching for and downloading over the Internet the images of child pornography located on both computers. He admitted to having a problem with child pornography which included storing, managing and viewing both collections for the purpose of sexual gratification. He also admitted to masturbating to those images. He then further added that he had stolen young girls' underwear from laundry-mats and masturbated into the garments.

3

The Defendant admitted that he has been searching and looking at child pornography on the Internet since 1998. He stated that he would search for child pornography on the computer using terms such as "lolita," "underage," "10 yo," "11yo", and "pedo."

On November 1, 2012, law enforcement conducted another interview with Defendant. The following represents a summary of the recorded interview but does not contain every statement: During the interview, the Defendant again admitted to having a problem with child pornography. The Defendant admitted downloading numerous images of child pornography. The Defendant was shown images of child pornography that were found on his computer and identified them as images contained in his collection. These images include sadistic and masochistic conduct and bestiality, including but not limited to the following images:

- real lolicon 1 (433).jpg: This image depicts a naked prepubescent minor girl under the age of 12 who is bound and gagged with ropes. The girl's arms and legs are tied down and spread out, and depicts the girl's genital and/or pubic region.

- real lolicon 1 (4).jpg: This image depicts a naked prepubescent minor girl in black knee-high tights. The girl is bound by ropes, where her arms are tied behind her head and her legs are tied together and spread apart. The image depicts the girl's genital and/or pubic region.

The Defendant also stated he had owned the computer that was subsequently found at Residence 1, but forgot that it was left behind. He also admitted to downloading more images depicting child pornography to his new computer at Residence 2, although he claimed that he would go through bouts of "guilt" where he would delete everything from his hard drive. After only a few weeks after the file deletion, the Defendant would begin to re-amass images of child pornography.

The Defendant also admitted that he would drive around in specific neighborhoods and watch people undressing from his car. In addition, he stated that he would try to look at girls

4

with their legs spread open at shopping malls and that he cannot help himself from doing so. He stated that when he gets hugs from girls, he feels their breast up against his chest and this bothers him to a certain extent. He also stated that he made a video of himself masturbating during sometime in the year 2000.

In addition, the Defendant admitted that he has the following fetishes:

- He wears women's dirty underwear and masturbates in them. He said that he finds underwear in public Laundromats, friends' houses who have teenage girls, and has bought them from a department store.

- He likes to look at pictures of girls peeing.

- He watches video cameras of women in the bathroom.

- He watches videos of Asian women on a train that are drunk, get taken advantage of and, defecate in their underwear.

## II. THE SENTENCING FACTORS ENUMERATED IN 18 U.S.C. § 3553(a) DEMONSTRATE THAT THE DEFENDANT SHOULD BE SENTENCED TO A TERM OF IMPRISONMENT WITHIN THE ADVISORY SENTENCING GUIDELINES RANGE OF 78-97 MONTHS

In determining a just sentence, the Court is directed by statute to consider a number of factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to provide just punishment for the offense, promote respect for the laws, and reflect the seriousness of the offense, and to afford adequate deterrence and protect the public. 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

The Defendant is charged with knowingly possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Based upon the parties' responses to the Presentence Investigation Report (PSR) and the Plea Agreement, there does not appear to be a real dispute about the nature and circumstances of this offense, including the advisory sentencing guideline computation. The

PSR correctly provides enhancements for child pornography involving very young children, material involving sadistic or masochistic abuse or other depiction of minors, the use of a computer in the commission of the offense to receive and possess the material, and the possession of well more than 600 images. The resulting advisory range is 78 to 97 months of imprisonment.

The Defendant collected child pornography using his home computers and related media. He accumulated his collection by searching for it through the Internet using terms such as "lolita," "underage," "10 yo," "11yo", and "pedo," all terms consistent with child pornography. The names of the files and the keywords associated with the files that Defendant searched for and downloaded tell the collector that they are likely to be child pornography. Child pornography collectors tend to use terms showing the age, sexual activity, name of the victim and other keywords, such as PTHC, in the titles of the files they collect. (See above file names). This type of collecting of child pornography is ordinarily done for personal reasons, not financial profit. However, collecting child pornography from others on the Internet allows collectors to fuel their sexual fantasies, collect child pornography, and rationalize that their behavior is not wrong or harmful to children, while perceiving that their behavior is anonymous behind a computer screen. Searching for and collecting child pornography propagates and re-propagates a terrible enduring record of the sexual victimization and abuse of countless young children. Collectors necessarily sustain and support other criminals in their offender behavior. The harm to the victims is massive and unending.

A forensic review of the Defendant's computers and storage media recovered well over 600 images and videos of child pornography. Even a cursory review of some of these filenames

makes clear that Defendant was interested in images of prepubescent children engaged in hardcore sex acts, including sadistic and masochistic conduct, among other files.

The Defendant's collection includes more material that will likely be known to the National Center for Missing and Exploited Children (NCMEC). However, the government is still awaiting the results of the submission of this material to NCMEC for such victim identification. During the negotiation of the plea agreement in these matters, the Defendant agreed to pay $2,500 in restitution to each identified victim.

### B. History and Characteristics of the Defendant

Defendant's history and characteristics include a long standing and persistent sexual attraction to minors, which manifested itself through child pornography collecting. He has been seeking out and collecting child pornography for at least 14 years, from 1998 through 2012. He amassed a computer full of child pornography in his first residence, when he lived alone. When he moved in with his fiancé and at the time of the search warrant, Defendant had amassed an entirely new collection of child pornography on a second computer.

There are also other troubling behaviors in Defendant's personal history, including his personal fetishes. Specifically, the Defendant's admissions regarding driving around watching people undressing from his car, watching girls with their legs spread open at shopping malls, wearing girls' dirty underwear that he stole from Laundromats and friends' houses, and watching videos and pictures of girls peeing and defecating are particularly disturbing.

While it is also true that the Defendant has no criminal record – however, simply put, that he managed to avoid being caught during his long period of continual criminal activity, thereby avoiding such a record, should count him little credit.

### C.   Seriousness of the Offense, Promotion of Respect for the Law, and Provide Just Punishment

The sentence ultimately imposed on the Defendant must also reflect the seriousness of his offenses, promote respect for the law, and provide a just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A).

The Supreme Court has recognized the unique and enduring perniciousness of child pornography offenses.  See, e.g., *New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982) ("pornography poses an even greater threat to the child victim than does sexual abuse or prostitution" (internal quotations omitted)).  Child pornography is the memorialization of physical sexual abuse.  It is used for the personal sexual gratification of men like the Defendant. It is used to entice and coerce other children into acts of sexual abuse.  It is used as an item of barter between likeminded child sex offenders.  It is used to encourage other child sex offenders to physically abuse other children for the purpose of producing more child pornography.  And once released onto the internet, it lives on forever.  It haunts the children depicted in it, who live daily with the knowledge that countless men like the Defendant use videos and images of their worst experiences in life for the reasons noted above.

For these reasons, Congress has recognized that child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved," because it creates a permanent record of the child's abuse and allows for the continued victimization of that child.  Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, Div. A, Title I, §§ 121(1) & (2), 110 Stat. 3009-26 (1996) (codified at 18 U.S.C. § 2251 Congressional Findings).

Congress also found that the mere existence of these types of depictions of children, as

well as their production and distribution, "creates the potential for many types of harm in the community and presents a clear and present danger to all children; and it inflames the desires of child molesters, pedophiles, and child pornographers who prey on children." *Id.* § 121(10)(A) & (B); *United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006) ("Congress found little distinction between the harm caused by a pedophile, be he a distributor or mere consumer of child pornography").

In addition to the danger that they present to all children, child pornography offenders perpetuate the abuse suffered by the children depicted in the images that they collect. As the Fifth Circuit has stated, "[T]he 'victimization' of the children involved does not end when the camera is put away." *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998); *Ferber*, 458 U.S. at 759 n.10 ("Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulated within the mass distribution system for child pornography.") (internal quotations omitted). It is against this backdrop of irreparable harm to children, combined with the exponential increase in the commission of these Internet-fueled offenses, that Congress has sought to impose increasingly longer prison sentences against child pornography offenders.

The Defendant's seeking out and collecting of child pornography images for at least 14 years is a horrific re-victimization of the children depicted.

### D. Afford Adequate Deterrence and Protect the Public

The sentence imposed on the Defendant must also afford adequate deterrence to criminal conduct of this nature, and protect the public from further crimes of the Defendant. 18 U.S.C. § 3553(a)(2)(B) and (C). It is clear from the nature and circumstances of the Defendant's offense,

his admissions, and his Psychosexual Evaluation, that he was obsessively focused on fueling his sexual fantasies by seeking out and collecting child pornography. There is no reason to believe that the Defendant would suddenly abandon this conduct that he has been doing continuously for fourteen years. He was only stopped upon his arrest.

It is also critically important to note that the Defendant had substantial social resources and connections that would have served to deter many individuals, or to provide counseling and support that could have assisted the Defendant in overcoming whatever it is that drove his long standing and persistent sexual attraction to minors. These resources included a supportive fiancé, father, siblings, and children. The fact that he committed this offense with such people in his life indicates that he is not easily deterred.

The public can only be protected from like-minded individuals (and those individuals adequately deterred from acting on such an all-consuming obsession) with an appropriate sentence, such as one within the advisory guidelines range, that demonstrates the Court's willingness to deliver an appropriate punishment.

## III. THERE IS NO BASIS FOR THE COURT TO DEPART OR VARY FROM THE ADVISORY SENTENCING GUIDELINES

To the extent Defendant argues that the Court should depart from or disregard the sentencing guidelines because of his mental health issues and personal history, as discussed in Dr. Johnson's Psychosexual Evaluation and the PSR, the Government respectfully submits that based on existing law there is no reasonable basis to justify departing or varying from the advisory guideline range of 78 to 97 months. The government likens this argument to one of diminished capacity.

10

The Seventh Circuit, in numerous opinions cited below, has applied a presumption of reasonableness to a within-guideline sentence on appeal. Furthermore, Congress has made clear its intention that downward departures and deviations be exceedingly rare in child exploitation cases. For example, in 18 U.S.C. § 3553(b)(2), Congress enacted sentencing parameters for child exploitation offenses that were separate from those that applied in all other cases. In 18 U.S.C. § 3553(b)(2), Congress articulated its intention that all sentences in child exploitation cases fall within the Sentencing Guidelines unless that court found that there existed a mitigating circumstance of a kind and to a degree, that had been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements. 18 U.S.C. § 3553(b)(2)(A)(ii). The Sentencing Commission adopted this limitation by enacting USSG § 5K2.0(b). There, the Commission expressly limited departures in child exploitation cases to those grounds enumerated in USSG § 5K2.0. These include coercion, voluntary disclosure, and post-sentencing rehabilitative efforts, none of which apply here. The Commission also amended certain of the departure provisions in U.S.S.G. § 5K2.0(b) to explicitly bar most departures in child exploitation cases, including diminished mental capacity.

The Government recognizes that USSG § 3553(b)(2) and USSG § 5K2.0(b) are no longer mandatory in light of *United States v. Booker*, 543 U.S. 220 (2005). However, the Government asks the Court to nevertheless give significant weight to these statutory and sentencing policy statements that departures be extremely rare in child exploitation cases for reasons of diminished capacity.

Child pornography offenders with diminished capacity present courts with difficult sentencing options because of the reduced potential for these defendants to conform their behavior to legal norms. In *United States v Garthus*, 652 F.3d 715, 720-21 (2011), the Seventh

11

Circuit stated "The gravity of the defendant's [child pornography] offense should not be denigrated. *See also United States v. Goldberg*, 491 F.3d 668, 669, 672 (7th Cir.2007) (recognizing that young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded—both consumed himself and disseminated to others).

In *Goldberg*, the Seventh Circuit considered a case in which a defendant downloaded hundreds of pornographic photographic images, some depicting children as young as 2 or 3 being vaginally penetrated by adult males. He then offered these images to other subscribers to the web site to induce them to send similar images in return. The Seventh Circuit stated that the greater the customer demand for child pornography, the more that will be produced. *Goldberg*, 491 F.3d 668 at 671-72. The logic of deterrence suggested that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced. *Id.*

In *United States v Stinefast*, 724 F.3d 925, 931-32 (2013), the Seventh Circuit upheld a district court's rejection of a lower sentence for diminished capacity in a child pornography case based upon the defendant's sustained serious psychological trauma as the victim of sexual abuse because there was no evidence at all linking his condition to his offense conduct. The psychiatric evaluation Stinefast submitted contained diagnoses for post-traumatic stress disorder, depression, and anxiety resulting from his sexual abuse. *Id.* But the report did not connect these mental health issues with Stinefast's sexual fascination with children generally or to the specific instance of child pornography distribution that led to his conviction. Indeed, the report noted an absence of evidence that Stinefast was sexually attracted to children. The lack of evidence establishing a link between Stinefast's psychological disorders and the offense of conviction

12

rendered his diminished capacity argument immaterial. *Id* at 931-32; *see also United States v. Portman*, 599 F.3d 633, 639 (7th Cir.2010) ("[A] legal diminished capacity finding also requires a causal link between the mental capacity and the crime"); *United States v. Beier*, 490 F.3d 572, 574 (7th Cir.2007) (affirming sentence when defendant did not "present any evidence suggesting that a low-normal IQ, or learning disabilities, break down a person's resistance to becoming ... a producer of child pornography"). Although Stinefast's attorney argued that this connection existed in that case, these unsupported assertions are not evidence and could not take the place of expert reports or other scientific evidence needed to establish such a link. *See United States v. Chapman*, 694 F.3d 908, 914–15 (7th Cir. 2012)(citing above language).

The Seventh Circuit has recognized the impact of lengthy sentences in attempting to eliminate the market for child by imposing lengthy sentences on those who fuel the market. The overarching goal of the sentencing guideline enhancements is to weaken the market for child pornography that "keeps the producers and distributors of this filth in business." (citing *United States v. Ellison*, 113 F.3d 77, 81 (7th Cir. 1997). *See also United States v. Richardson*, 238 F.3d 837, 839 (7th Cir. 2001); *United States v. Turchen*, 187 F.3d 735, 737 n. 2 (7th Cir. 1999)). The greater the customer demand for child pornography, the more that will be produced. *See Osborne v. Ohio*, 495 U.S. 103, 109-11 (1990); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006); *United States v. Richardson*, 238 F.3d 837, 839 (7th Cir. 2001); *United States v. Angle*, 234 F.3d 326, 337-38 (7th Cir. 2000). Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor.

### A. U.S.S.G. §§ 5H1.3 and 5K2.0

The Sentencing Guidelines provide that mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in

combination with other offender characteristics, are present to an usual degree and distinguish the case for the typical cases covered by the guidelines.  U.S.S.G. § 5H1.3.  However, this provision should be read together with U.S.S.G. § 5K2.13, which concerns downward departures for diminished capacity.  For some non-child pornography offenses, a defendant may receive a downward departure if 1) they committed an offense while suffering from a significantly reduced mental capacity; and 2) the significantly reduced mental capacity contributed substantially to the commission of the offense. *See* U.S.S.G. 5K2.13.  However, the diminished capacity guideline specifically excludes such departures in child pornography cases like this one. *See* 5K2.13 ("the court may not depart below the applicable guideline range if . . . . (4) the defendant has been convicted of an offense under chapter . . . 110 of the United States Code (which includes 18 U.S.C. § 2252)).

The government believes that the Defendant's mental health should be given substantial weight only if they contributed to his commission of the child pornography offense.  Yet if so, then the advisory guidelines reject such a diminished capacity argument in USSG § USSG 5K2.13 because of the nature of the offense.

More broadly, a carefully examination of Defendant's Psychosexual Evaluation and the information contained in the PSR shows that there is no evidence that any of Defendant's mental health problems would cause him to become sexually attracted to minors or to collect child pornography.  This is no factual or logical basis to conclude that his conditions significantly contributed to his commission of the criminal offense.  Rather, Defendant's diagnosis accurately reflect his sexual attraction to minors and violence – i.e. Paraphilia NOS (Sexual Arousal to Children/Minors and Rape). (Psychosexual Evaluation, at 9.)

Finally, as discussed above, the Defendant enjoys the support of his fiancé and family.

14

This will help him when he is no longer under a criminal justice sentence or under supervision. However, this factor cannot be significant enough to justify a substantial sentencing reduction without risking substantial disparities among offenders. Defendant is sexually attracted to minors, has low impulse control, and has not been able to control his criminal behavior. He has admitted to experiencing continued thoughts of suicide on a daily basis. (PSIR ¶ 58; Psychosexual Evaluation, at 1.) His mental health issues make him more difficult to treat and increase the need to protect the public from him. For all these reasons, he would normally have a higher risk of reoffending, not a lower one. Hopefully, his family ties will help prevent this, but we cannot expect his friends and family to prevent him from re-offending to such an extraordinary degree that such ties should greatly control the sentencing analysis when balanced against the other factors in 18 U.S.C. § 3553. Despite an undoubtedly positive relationship with him in the past, they did not know about his criminal activities and could not prevent them, even though they occurred over fourteen years.

## IV.     CONCLUSION

After calculating the guidelines range, the Court must consider the factors described in 18 U.S.C. § 3553(a) to reach a reasonable sentence. *See United States v. Booker*, 543 U.S. 220, 226 (2005). Defendant's guideline range of 78 to 97 months of imprisonment reflects both the nature and circumstances of his conduct and the seriousness with which Congress and the Sentencing Commission view the sexual exploitation of minors. Based upon the conduct listed above, the government intends to argue for a sentence within the advisory sentencing guidelines range as necessary to account for the factors that the Court must consider under 18 U.S.C. § 3553(a).

Accordingly, the government respectfully requests the Court sentence the Defendant within the advisory guidelines range of 78 to 97 months, which is appropriate considering all of the facts and circumstances of this case, and the sentences imposed on other offenders committing similar crimes involving children.

Respectfully submitted,

JOSEPH H. HOGSETT
United States Attorney


 s/ MaryAnn T. Mindrum_____
MaryAnn T. Mindrum
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a copy of the foregoing Sentencing Memorandum was filed electronically on February 21, 2014.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Monica Foster, Chief Defender
Federal Community Defenders


By:    s/MaryAnn T. Mindrum
       MaryAnn T. Mindrum
       Assistant United States Attorney
       Office of the United States Attorney
       10 W. Market Street, Suite 2100
       Indianapolis, IN 46204-3048
       Telephone: (317) 226-6333
       Fax:  (317) 226-6125
       Email:  MaryAnn.Mindrum@usdoj.gov

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
         Sheet 1

# UNITED STATES DISTRICT COURT

**SOUTHERN**      District of      **INDIANA**

UNITED STATES OF AMERICA      **JUDGMENT IN A CRIMINAL CASE**

**V.**

WILLIAM DONALD HORNER

| | |
|---|---|
| Case Number: | 1:13CR00124-001 |
| USM Number: | 11165-028 |

Monica Foster
_Defendant's Attorney_

## THE DEFENDANT:

**X** pleaded guilty to count(s)    1

**G** pleaded nolo contendere to count(s)
   which was accepted by the court.

**G** was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count(s) |
|---|---|---|---|
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography | 10/24/12 | 1 |

     The defendant is sentenced as provided in pages 2 through   5   of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

**G** The defendant has been found not guilty on count(s)

**G** Count(s)      **G** is    **G** are   dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**A CERTIFIED TRUE COPY**
Laura A. Briggs, Clerk
U.S. District Court
Southern District of Indiana
By _Laura R. Gencur_
         Deputy Clerk

2/27/2014
Date of Imposition of Judgment

_Tanya Walton Pratt_

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

03/10/2014
Date

AO 245B    (Rev. 09/11) Judgment in Criminal Case
           Sheet 2 — Imprisonment

Judgment — Page    2    of    5

DEFENDANT:          WILLIAM DONALD HORNER
CASE NUMBER:        1:13CR00124-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:      70 months

**G** The court makes the following recommendations to the Bureau of Prisons:

**X** The defendant is remanded to the custody of the United States Marshal.

**G** The defendant shall surrender to the United States Marshal for this district:

    **G** at _____ **G** a m. **G** p.m.   on _____ .

    **G** as notified by the United States Marshal.

**G** The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    **G** before 2 p.m. on _____ .

    **G** as notified by the United States Marshal.

    **G** as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page   3   of   5

DEFENDANT:        WILLIAM DONALD HORNER
CASE NUMBER:      1:13CR00124-001

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :    Life

 

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

☒  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

☒  The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☒  The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense.  (Check, if applicable.)

☐  The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant shall comply with the standard conditions that  have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal  activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 3C — Supervised Release

Judgment—Page   3.01   of   5

DEFENDANT:        WILLIAM DONALD HORNER
CASE NUMBER:      1:13CR00124-001

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall pay any fine that is imposed by this judgment and that remains unpaid at the commencement of the term of supervised release.

2.  The defendant shall provide the probation officer access to any requested financial information.

3.  The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer.

4.  The defendant shall submit to the search (with the assistance of other law enforcement as necessary) of his person, vehicle, office/business, residence and property, including computer systems and peripheral devices.  The defendant shall submit to the seizure of contraband found.  The defendant shall warn other occupants the premises may be subject to searches.

5.  The defendant shall not possess/use a computer unless he agrees to comply with the Computer Restriction and Monitoring Program at the direction of the probation officer.  Monitoring will occur on a random or regular basis.  The defendant shall advise the probation office of all computers available to him for use.  Any computer or Internet-enabled device the defendant is found to have used and has not disclosed shall be considered contraband and may be confiscated by the probation officer.  The defendant shall warn other occupants of the existence of the monitoring software placed on his computer.

6.  The defendant shall not possess any pornography, erotica or nude images.  Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

7.  The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer.  The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer.

8.  The defendant shall not have any unsupervised contact with any minor child, unless the contact has been disclosed to and approved by the probation officer.  In determining whether to approve such contacts involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about his conviction in this case and the fact that he is under supervision.  If this notification has been made, and if the person having custody consents to the contact then this condition is not intended to prevent approval of the contact.

9.  The defendant shall register as a sex offender with the appropriate authorities of any state in which he resides, is employed, or attends school.

10. The defendant shall pay any outstanding location monitoring fees that were accrued while on pretrial supervision.


  Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

  These conditions have been read to me.  I fully understand the conditions and have been provided a copy of them.


(Signed)

_____        _____
Defendant                                Date

_____        _____
U.S. Probation Officer/Designated Witness    Date

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 5 — Criminal Monetary Penalties

Judgment — Page __4__ of __5__

DEFENDANT:      WILLIAM DONALD HORNER
CASE NUMBER:    1:13CR00124-001

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|          | **Assessment** | **Fine**    | **Restitution** |
|----------|----------------|-------------|-----------------|
| **TOTALS** | $ 100.00     | $ 2,500.00  | $               |

G   The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

G   The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|-------------------|-----------------|-------------------------|----------------------------|
|                   |                 |                         |                            |
| **TOTALS**        | $        0.00   | $        0.00           |                            |

G   Restitution amount ordered pursuant to plea agreement   $ _____

The defendant shall pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

X   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

X   the interest requirement is waived for the   X   fine   G   restitution.

G   the interest requirement for the   G   fine   G   restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __5__ of __5__

DEFENDANT:          WILLIAM DONALD HORNER
CASE NUMBER:      1:13CR00124-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  ☐  Lump sum payment of $ _____ due immediately, balance due

        ☐  not later than _____ , or
        ☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☐ G below; or

**B**  **X**  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ G below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the restitution
ordered herein and the Court may order such payment in the future.

**G**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial
Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
and corresponding payee, if appropriate.

| Defendant Name | Case Number | Joint & Several Amount |
| --- | --- | --- |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

**X**  The defendant shall forfeit the defendant's interest in the following property to the United States:
all property seized by authorities during the searches of his residence.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.